(No. 46369.—

INCINERATOR, INC., Appellant, v. THE POLLUTION CONTROL BOARD *et al.*—(The Environmental Protection Agency, Appellee.)

*Opinion filed November 27, 1974.*

Pedersen & Houpt, of Chicago (Richard V. Houpt, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield (Richard W. Cosby and Dennis R. Fields, Assistant Attorneys General, of Chicago, of counsel), for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

The Environmental Protection Agency (EPA) brought an action against appellant, Incinerator, Inc., alleging violation of various provisions of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*) and of certain rules and regulations of the Illinois Pollution Control Board adopted pursuant thereto. At the conclusion of extensive hearings before the Pollution Control Board, the Board fined appellant $20,000 for causing air pollution and $5,000 for failure to file an "Air Contaminant Emission Reduction Program." Appellant was further ordered to cease and desist operations until such time as satisfactory air-pollution-control equipment was installed and other specified corrections were accomplished. Its petition for variance, which was considered at the same time, was denied. The appellate court affirmed

(*Incinerator, Inc. v. Pollution Control Board* (1973), 15 Ill. App. 3d 514), and we have allowed appellant's petition for leave to appeal.

Since 1958 appellant has operated a large refuse incinerator situated in the village of Stickney near its border with the town of Cicero. The plant operates seven days a week and has the capability of processing 500 tons of solid waste per day in its two rotary-kiln incinerators. Refuse from various municipalities accounts for most of the plant's capacity, although the plant also accepts refuse from private scavengers. On April 2, 1971, the EPA filed a complaint alleging that during specified periods appellant: (1) had caused air pollution in violation of section 9(a) of the Environmental Protection Act and corresponding provisions of the Air Pollution Control Act previously in effect; (2) had emitted particulate matter in violation of Rule 3—3.232 of the Pollution Control Board's rules and regulations governing the control of air pollution; (3) had discharged smoke in excess of and in violation of the same section of said rules and regulations; and (4) had failed to file a letter of intent to file an "Air Contaminant Emission Reduction Program" as required by section 2—2.12 of said rules and regulations. The EPA subsequently filed an amendment charging appellant with installation of new pollution-control equipment without obtaining a permit as required by section 9(b) of the Act and Rule 3—2.110 of the Board's rules and regulations. Shortly after the complaint was filed, appellant filed a petition for variance before the Pollution Control Board which was consolidated with the complaint for hearing. In its answer to the EPA's complaint, appellant denied causing air pollution as charged and pleaded an affirmative defense that the compliance required by the EPA was "technologically unfeasible as the available pollution control equipment had [not] yet proven to be effectively adaptable to this or similar institutions." Appellant admitted its failure to comply with the Board's rules and regulations requiring

the filing of the "Air Contaminant Emission Reduction Program."

The principal question raised on this appeal concerns the alleged violation of section 9(a) of the Environmental Protection Act. In order to properly define the issues involved, it is necessary to set forth the pertinent statutory provisions. Section 9(a) provides that: "No person shall: (a) Cause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants from other sources, or so as to violate regulations or standards adopted by the Board under this Act." (Ill. Rev. Stat. 1971, ch. 111½, par. 1009(a).) The term "air pollution" is defined in section 3(b) of the Act as "the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, or animal life, to health, or to property, *or to unreasonably interfere with the enjoyment of life or property.*" (Emphasis added.) (Ill. Rev. Stat. 1971, ch. 111½, par. 1003(b).) Section 33(c) of the Act provides as follows: "In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to: (i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people; (ii) the social and economic value of the pollution source; (iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and (iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source." (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c).) Section 33(a) of the Act contains the following provisions with regard to

decisions rendered by the Board: "After due consideration of the written and oral statements, the testimony and arguments that shall be submitted at the hearing, or upon default in appearance of the respondent on return day specified in the notice, the Board shall issue and enter such final order, or make such final determination, as it shall deem appropriate under the circumstances. *In all such matters the Board shall file and publish a written opinion stating the facts and reasons leading to its decision."* (Emphasis added.) Ill. Rev. Stat. 1971, ch. 111½, par. 1033(a).

It is evident that in section 3(b) the legislature has by definition created two categories of "air pollution." The first is the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, or animal life, to health, or to property. The second category is the presence of such contaminants in such amounts, characteristics and duration as to unreasonably interfere with the enjoyment of life or property. We are here concerned with the second category of air pollution, and the issues may be summarized as follows: (1) Must the various factors specified in section 33(c) be proved and considered by the Board in determining whether there has been a violation of the Act by causing air pollution of the type which unreasonably interferes with the enjoyment of life or property; (2) in rendering its decision, to what extent must the Board make specific findings as to such factors or otherwise show that it has taken them into consideration; and (3) in this case was the Board's finding that appellant had caused air pollution against the manifest weight of the evidence?

In *City of Monmouth v. Pollution Control Board* (1974), 57 Ill.2d 482, it was alleged that section 9 of the Environmental Protection Act was unconstitutional for the reason that it did not contain sufficient standards for determining what constitutes air pollution. We there held

that section 9(a) when read in conjunction with other provisions of the Act, including section 33(c), contains sufficient standards. Likewise in *City of Waukegan v. Pollution Control Board* (1974), 57 Ill.2d 170, we observed that section 33(c) provides a protection against arbitrariness and furnishes guidelines for the Board in reaching its decision. However, in neither of those cases did we give specific attention to the related issues now raised on this appeal.

The provisions here in question rather clearly direct that the unreasonableness of an alleged air-pollution interference must be determined by the Board with reference to the section 33(c) criteria. Air pollution of the second category is not proved unless there has been a showing of an unreasonable interference with the enjoyment of life or property. Section 33(c) sets forth four categories of factors which bear upon the question of reasonableness and specifically directs that the Board "shall take into consideration" such factors in making its orders and determinations. Section 33(a) requires the Board to file and publish a written opinion stating the facts and reasons leading to its decision. The Board must take into consideration the factors referred to in section 33(c) and must indicate that it has done so in its written opinion by stating the facts and reasons leading to its decision.

Our examination of the record before us indicates that the Pollution Control Board did hear evidence pertaining to the section 33(c) criteria and did take those factors into consideration in reaching its determination. We have further concluded that the Board's finding that appellant had caused air pollution in violation of section 9(a) of the Act was not against the manifest weight of the evidence and that the $20,000 penalty imposed for the violation was justified under the circumstances.

A significant portion of the hearing was devoted to the taking of evidence concerning "the character and

degree of injury to, or interference with the protection of the health, general welfare and physical property of the people" as specified in section 33(c)(i). The testimony of various residents in the area established convincingly the appellant's plant had produced a substantial amount of flyash, heavy emissions of smoke and foul odors over an extended period of time, which in a number of ways caused a substantial interference with the enjoyment of life and property. It is evident that in its written order the Board took these factors into consideration in reaching its determinations.

With respect to the section 33(c)(ii) factors regarding "the social and economic value of the pollution source," there was testimony concerning the availability of other incinerators and landfill disposal sites which could be used to handle the needs of the public during the time that appellant was installing the necessary equipment to eliminate the interference. There was also testimony as to the time period which would be required for such equipment to be purchased, installed and made operational. In rendering its decision, the Board expressly provided for a 10-day period during which the petitioner could "phase its close-down operation and in which the municipalities presently using the facility may search out other means of disposal." The Board went on to state: "We are not convinced by the record that an unreasonable hardship will be imposed upon the municipalities; there are at present several land disposal sites and incinerators within the Chicago metropolitan area available to service their needs in the interim." We note that the Board also took into account the effect on the 25 employees which would be affected by any close down of appellant's operation. The Board concluded: "The brevity of this installation time with the consequent short layoff and the nuisance character of the emissions convinced this Board that any hardship imposed upon the employees is worth it in this case."

In its written order the Board made specific reference to the fact that it was directed under section 33(c)(iii) of the Act to take into consideration the "suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved." Evidence was heard concerning the zoning and uses of property in the area, including the nature of operation of other industries in the vicinity. There was also testimony concerning the number of homes and buildings which predated the construction of appellant's facilities and the number built thereafter. Upon consideration of these factors the Board concluded that "Just because an area can be characterized as chiefly industrial and Incinerator may have been there before some of the individual complainants purchased their homes, does not entitle the facility to create a nuisance for its neighbors."

The principal issue at the hearing was that concerning the "technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits" referred to in section 33(c)(iv). No useful purpose would be served in analyzing the extensive evidence on this matter, a substantial portion of which involved technical data and expert testimony. It suffices to say that there was competent evidence that during the pertinent periods of time in question there had been available to appellant technically practicable devices such as a Detrick-Jens wet baffle system which would have eliminated the section 9(a) air-pollution interference. It was also established that appellant had funds available to pay for the installation of such equipment. The estimated $200,000 to $250,000 expenditure which would have been required was substantially less than an alternative plan costing 1.7 million dollars which appellant had under consideration and apparently could have afforded. Appellant did produce evidence that pollution-control equipment at different locations in the country had developed

operating problems and that the state of technology with respect to installation of equipment on incinerators of the size here in question had not been perfected. Nevertheless, we are not persuaded that such evidence compels the conclusion that the difficulties which had been encountered in the past in other settings were insurmountable or that the pollution-control systems which could have been installed on appellant's incinerators were either technically impracticable or economically unreasonable.

We are inclined to agree with appellant that the Board was not as specific as it might have been in making written findings as to each of the section 33(c) criteria. However, there was substantial compliance with the Act, and in view of all the evidence and the fact that the Board appears to have properly determined the issue of reasonableness in light of the section 33(c) factors, we do not deem it necessary to remand the cause for further findings. We would expect that decisions of the Board rendered after the date of this opinion will be more specific in this regard. We are also in agreement with appellant that the Board's occasional use of such terms as "nuisance emission," "nuisance violation" and the like in its written order was not appropriate, since the violations of the Act here in question are not defined in terms of nuisances. However, it appears that the word "nuisance," when read in the context in which it was used, was meant to have the same meaning as an air-pollution violation under the Act and does not reflect the application of a different standard from that specified in the Act. Neither does it indicate that the Board exceeded its powers by imposing penalties for common-law nuisances independently of the Act.

In addition to the foregoing matters, appellant advances a related argument that the EPA did not meet its burden of proof as required by section 31(c) of the Act. (Ill. Rev. Stat. 1971, ch. 111½, par. 1031(c).) That section provides: "In hearings before the Board under this Title the burden shall be on the Agency or other complainant to

show either that the respondent has caused or threatened to cause air or water pollution or that the respondent has violated or threatens to violate any provision of this Act or any rule or regulation of the Board. If such proof has been made, the burden shall be on the respondent to show that compliance with the Board's regulations would impose an arbitrary or unreasonable hardship." We agree with appellant that the EPA had the burden of proving all essential elements of the type of air-pollution violation charged, and the Board must then assess the sufficiency of such proof by reference to the section 33(c) criteria, basing thereon its findings and orders. It also appears that appellant's contention that the EPA did not sustain its burden of proof during its case in chief is not entirely without merit. Nevertheless, following the close of the EPA's evidence appellant proceeded with its own evidence during which the EPA adduced testimony on cross-examination, which in our opinion remedied any shortcomings which may have existed as to proof of essential matters during its case in chief. On the record before us we conclude that appellant's contentions as to the EPA's failure to meet its burden of proof cannot be sustained.

In addition to the section 9(a) violation, appellant was also found by the Board to have violated the particulate-emissions and smoke-emissions standards of Rule 3—3.232 of the Pollution Control Board's rules and regulations. No monetary penalties were imposed for either of these violations. Appellant nevertheless argues on this appeal that the Board's findings were not supported by competent evidence.

An extended discussion of the evidence as to these violations is not called for. The particulate-emissions standards in question establish a maximum rate of .2 grams per standard cubic foot adjusted to 50 percent excess air. An engineer testified for the EPA that his calculations indicated that the rate of particulate emissions from appellant's facility was .66 grams. His testimony to this

effect was based on a number of factors, including operating information supplied by appellant, his own background and experience in engineering and mathematics, and certain tables and charts appearing in Federal publications which were objected to by appellant. The smoke-emissions standards provide that incinerators shall not "emit or produce smoke the appearance, density or shade of which is No. 2 or darker on the Ringelmann Chart." Two witnesses who were qualified to make Ringelmann smoke readings without the physical presence of the prescribed chart testified that their observations of the smoke being emitted from appellant's stacks on different occasions indicated smoke emissions of up to No. 4 Ringelmann. In its written opinion the Board noted that while it found Reingelmann readings "more acceptable" when "taken and simultaneously recorded," the evidence in this case was sufficient in view of the training of the witnesses and the "apparent gross violation." Our review of the evidence leads us to conclude that the Board's findings of a violation of the Rule 3—3.232 particulate- and smoke-emissions standards are not contrary to the manifest weight of the evidence.

The final issue raised by appellant concerns its failure to file an "Air Contaminant Emission Reduction Program." This violation was admitted by appellant, and we are unable to agree with its contention that the $5,000 penalty which was imposed was arbitrary and excessive.

The judgment of the appellate court is accordingly affirmed.

*Judgment affirmed.*