(No. 46543.—

MYSTIK TAPE, Division of Borden, Inc., Appellee, v. THE POLLUTION CONTROL BOARD *et al.*— (Environmental Protection Agency, Appellant.)

*Opinion filed March 24, 1975.*

William J. Scott, Attorney General, of Springfield (Michael A. Benedetto, Jr., James I. Rubin, and Richard W. Cosby, Assistant Attorneys General, all of Chicago, of counsel), for appellant.

James W. Kissel, Theodore N. Miller, Thomas M. McMahon, and Philip E. Wenrich, of Chicago (Sidley & Austin, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

The Environmental Protection Agency (EPA) filed a complaint against Mystik Tape (Mystik), a division of Borden, Inc., charging that Mystik had violated section 9(a) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1009(a)) in causing air pollution. The complaint also charged that Mystik had violated section 9(b) of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1009(b)), and Rule 3—2.110 of the rules and regulations in installing certain equipment without first obtaining a permit.

The Pollution Control Board (Board) found that Mystik had violated both of the sections of the Act and Rule 3—2.110, and ordered Mystik to submit an odor-abatement program which would result in the abatement of the odor no later than June 1, 1973. The Board further assessed a fine of $3,500, apparently solely for installing

certain equipment without first obtaining a permit.

On appeal to the appellate court by Mystik, the order of the Board was set aside. The appellate court reversed the Board, holding, *inter alia*, (1) that the Board could not find a violation of section 9(a) of the Act until the Board first had adopted standards, in addition to those contained in the Act, and thereafter allowed a reasonable amount of time to comply with those standards, (2) that the Board misconstrued the elements necessary to a finding of a violation of section 9(a) of the Act, (3) that the finding of a violation of section 9(a) was against the manifest weight of the evidence, and (4) that Mystik had not violated section 9(b) of the Act in failing to obtain certain installation permits. (*Mystik Tape v. Pollution Control Board* (1973), 16 Ill. App. 3d 778.) We allowed the petition of the EPA for leave to appeal.

Four issues are raised in this appeal: (1) Do sections 9(a), 3(b), 3(d) and 33(c) of the Act set forth sufficient standards to permit a finding of a violation of the Act without the Board first announcing additional standards and allowing a reasonable time to comply therewith; (2) Must the Board, in making its determinations and orders, consider each and every one of the factors listed in section 33(c) of the Act; (3) Did the appellate court err in holding that there was no burden upon Mystik to obtain a permit to install certain odor-counteractant and other equipment; and (4) Were the findings of the Board with regard to the violation of section 9(a) of the Act contrary to the manifest weight of the evidence?

Certain sections of the Act must be quoted for an understanding of the parties' contentions and their resolution.

Section 9(a) of the Act provides:

"No person shall:

(a) Cause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants

from other sources, or so as to violate regulations or standards adopted by the Board under this Act." Ill. Rev. Stat. 1971, ch. 111½, par. 1009(a).

Section 3(b) of the Act defines air pollution as follows:

" 'Air Pollution' is the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, or animal life, to health, or to property, or to unreasonably interfere with the enjoyment of life or property." Ill. Rev. Stat. 1971, ch. 111½, par. 1003(b).

Section 5 of the Act describes the Board, its composition, functions, duties and powers. Section 5(b) thereof states:

"The Board shall determine, define and implement the environmental control standards applicable in the State of Illinois and may adopt rules and regulations in accordance with Title VII of this Act." Ill. Rev. Stat. 1971, ch. 111½, par. 1005(b).

Section 33 of the Act refers to the orders and determinations of the Board, requiring a written opinion reciting the facts and reasons leading to a decision and suggesting the broad scope permitted in any order. Section 33(c) states:

"In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges, or deposits involved including, but not limited to:

(i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;

(ii) the social and economic value of the pollution source;

(iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and

(iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source." Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c)(i), (ii), (iii), (iv).

Section 3(b) of the Act sets forth two categories of "air pollution." The first is the creation of contaminants sufficient to injure human, plant or animal life, health or property. The second is the dispersal of contaminants sufficient to unreasonably interfere with the enjoyment of life or property. (*Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill.2d 290, 295.) We are here concerned with the second category. Mystik contends that section 5(b) of the Act requires that the Board determine specific environmental control standards and that only a violation of such standards will result in a violation of the Act. Mystik argues that only in this manner can one be sufficiently apprised of what is an "unreasonable" interference with the enjoyment of life or property. We do not agree.

Section 9(a) of the Act specifies some of the conduct prohibited. It bars one from discharging any contaminant into the environment "so as to cause or tend to cause air pollution \*\*\* *or* so as to violate regulations or standards adopted by the Board \*\*\*." This section clearly contemplates that one may be in violation of the Act *either* if he causes air pollution *or* if he violates a regulation or standard. The Act does not require that a specific standard adopted by the Board be found to have been violated for there to be a determination either of air pollution or of prohibited conduct.

In *City of Monmouth v. Pollution Control Board* (1974), 57 Ill.2d 482, we recognized that a complaint under section 9(a) could be based either on a violation of an express statutory provision or on a violation of a regulation or standard adopted by the Board. (57 Ill.2d 482, 486.) We further held that there were sufficient standards to describe a violation of the statutory provision by reading section 9(a) in conjunction with sections 3(b), 3(d) and 33(c). 57 Ill.2d 482, 487.

In *Incinerator, Inc. v. Pollution Control Board* (1974),

59 Ill.2d 290, we expanded upon *Monmouth* by stating that it is essential to a finding of the second category of air pollution—that is, the unreasonable interference with the enjoyment of life or property—that the Board consider, at least, those four factors set forth in section 33(c). 59 Ill.2d 290, 296.

Section 33(c) thus provides meaningful safeguards in outlining considerations that must be included in reaching a decision by the Board. The requirement of section 33(a) that the opinion must set forth the facts and reasons for the decision serves to insure that the necessary considerations were given, and enables the court to fully and completely review the determinations made by the Board, and provides those affected by the Act with certain additional guidelines for their conduct. See *Maywood Park Trotting Association, Inc. v. Illinois Harness Racing Com.* (1959), 15 Ill.2d 559, 563; *Allied Metal Co. v. Pollution Control Board* (1st Dist. 1974), 22 Ill. App. 3d 823.

Thus, we find the specific standards referred to in section 5(b) are not necessary prerequisites to finding a violation of the statutory provisions of the Act. We agree with Mystik and the appellate court as to the desirability of the adoption of specific administrative standards. We do not, however, agree that such standards are necessary to a charge, or finding, of a violation of the Act.

The appellate court additionally noted the Board did not appear to require that the emission of contaminants must *unreasonably* interfere with the enjoyment of life or property for there to be a violation of section 9(a). (16 Ill. App. 3d 778, 795, 796, 797-804.) We concur with the conclusion of the appellate court in this regard, and we agree that this failure on the part of the Board constitutes error.

The Board reviewed the testimony of various witnesses insofar as they described the nature of the odor and concluded: "The odor did not appear to cause any property damage or to force people to seek medical

treatment. However, there is no question that the odors interfered with the comfort and enjoyment of life of the nearby residents, and constituted a nuisance and violated Section 9(a) of the act prohibiting the causing of air pollution."

The opinion of the Board does not indicate that it took into consideration the various factors, bearing upon "reasonableness," as set forth in section 33(c). Rather, it appears that the Board viewed the question of reasonableness in light of its interpretation in *Moody v. Flintkote Co.* (1971), 2 Ill. P.C.B. Op. 341. In *Moody* the Board stated:

> "All of this testimony conclusively proves that the emissions from the Flintkote plant 'interfere with the enjoyment of life or property' of the neighbors and those who come near the plant. The sole question remaining, then, is to determine whether such interference is 'unreasonable' as required by the Act. It is the position of this Board that air contaminant emissions are 'unreasonable' within the meaning of the Act when there is proof that there is an interference with life and property and that economically reasonable technology is available to control the contaminant emissions." 2 Ill. P.C.B. Op. 341, 350.

The *Moody* test has been used by the Board in later cases involving section 9(a) violations. See *Employees of Holmes Bros. v. Merlan, Inc.* (1971), 2 Ill. P.C.B. Op. 405; *Environmental Protection Agency v. Incinerator, Inc.* (1971), 2 Ill. P.C.B. Op. 505; *Environmental Protection Agency v. Chicago Housing Authority* (1972), 4 Ill. P.C.B. Op. 145; *Environmental Protection Agency v. American Generator and Armature Co.* (1972), 3 Ill. P.C.B. Op. 373.

The interpretation given by the Board to the questions of "unreasonable" and "reasonableness" clearly is not that dictated by the statute. (*Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill.2d 290, 296.) There is neither

the detailed recitation of facts and reasons justifying the conclusion reached by the Board which the Act requires (see *Maywood Park Trotting Association, Inc. v. Illinois Harness Racing Com.* (1959), 15 Ill.2d 559, 563; *Environmental Defense Fund, Inc. v. Ruckelshaus* (D.C. Cir. 1971), 439 F.2d 584, 597-598; 2 K. Davis, Administrative Law Treatise secs. 16.01, 16.05 (1958)) nor such recitation as to indicate that the Board considered the factors set forth in the Act.

We conclude that the determination of the Board that Mystik violated section 9(a) of the Act requires reversal. Unlike the appellate court, however, we believe the cause should be remanded to the Board for the taking of additional evidence, if either party deems it advisable, and for a determination then to be made based upon the evidence before the Board and the legal principles herein set forth. See Ill. Rev. Stat. 1971, ch. 110, par. 275(f), (g).

Because of the views expressed above, it is not necessary for us to reach or discuss the issue of the manifest weight of the evidence.

The Board also found that Mystik had violated section 9(b) of the Act and Rule 3—2.110 of the rules and regulations governing the control of air pollution, in failing to obtain a permit prior to the installation of certain equipment.

Section 9(b) of the Act provides:

"Sec. 9. No person shall:
* * *

(b) Construct, install, or operate any equipment, facility, vehicle, vessel, or aircraft capable of causing or contributing to air pollution or designed to prevent air pollution, of any type designated by Board regulations, without a permit granted by the Agency, or in violation of any conditions imposed by such permit." Ill. Rev. Stat. 1971, ch. 111½, par. 1009(b).

Rule 3—2.110 provides:

"A Permit shall be required from the Technical Secretary for installation or construction of new equip-

ment capable of emitting air contaminants to the atmosphere and any new equipment intended for eliminating, reducing or controlling emission of air contaminants."

Mystik had applied for a permit to install an odor-counteractant device, which permit was denied. It also had applied for a permit to install a certain No. 9 Spreader used in the manufacture of adhesive tape. This, too, was denied. The equipment was installed notwithstanding the denials.

The appellate court held that there was not a violation of section 9(b) because of the absence of specific standards adopted by the Board, and, further, because there had been no regulations promulgated by the Board covering the type of equipment involved.

As to the absence of specific administrative standards, the conclusions we have set forth earlier in this opinion are equally applicable here. Their absence does not impair the right to find a violation of section 9(b) of the Act.

Section 49(c) of the Act states:

"All rules and regulations of the Air Pollution Control Board, the Sanitary Water Board, or the Department of Public Health relating to subjects embraced within this Act shall remain in full force and effect until repealed, amended, or superseded by regulations under this Act." Ill. Rev. Stat. 1971, ch. 111½, par. 1049(c).

Rule 3—2.110 was adopted by the Air Pollution Control Board. It remained in effect until April 14, 1972, the date on which the Board adopted its air-pollution regulations. Section 49(c) contemplated that all existing regulations would remain in effect, and be enforceable by the Board (the successor to the Air Pollution Control Board) until such time as the Board could adopt new regulations.

The reference in section 9(b) to "Board regulations" must be read to include those regulations of the predecessor, the Air Pollution Control Board, during the interim period in which new regulations were not yet adopted under the Act. Otherwise, the adoption of the Act would

have given rise to a period of time when no rules or regulations would have been in force and permit requirements would have been totally abated. Such interpretation would thwart the expressed policy and purpose of the Act. Section 49(c) was intended to avoid just such an absurd result.

We are of the opinion that the conclusions of the Board that section 9(b) and Rule 3—2.110 were violated is correct. A reading of the entire order of the Board indicates that the fine of $3,500 was imposed for the violations of section 9(b) and Rule 3—2.110, relating to the failure to obtain permits. The Board had discussed the attempts by Mystik to cope with the odor problems. Thus, while it found a violation of section 9(a) of the Act, it directed only that Mystik submit a program to alleviate this problem.

The Board then discussed the failure to obtain permits and assessed the fine of $3,500. The evidence indicated that Mystik had applied for permits to install both the odor-counteractant devices and the No. 9 Spreader. The permit was denied as to the former because the EPA believed the devices would not reduce or prevent odor but only perfume the odor. The permit was denied as to the latter because the EPA was of the opinion that the spreader was a potential source of air pollution and thus needed an accompanying pollution-control device.

Mystik installed the equipment anyway, completing the installations in the fall of 1971. Mystik has now shut down its odor-counteractant devices. The violation of Mystik with regard to the installation of equipment without first obtaining permits warrants imposition of a fine of $3,500. Under the facts recited above, we do not find that arbitrary or oppressive. *Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill.2d 290.

In *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill.2d 204, we referred to the power of the Board to impose civil penalties primarily

as a method to aid enforcement of the Act, citing *City of Monmouth v. Pollution Control Board* (1974), 57 Ill.2d 482, 490. We noted that in the imposition of a fine, the Board should take into consideration all of the factors, as expressed in section 33(c). In *Southern Illinois Asphalt* we found that one company had acted in good faith and the failure of the company to obtain a permit was pure inadvertence. As to the other involved company we found that it was not dilatory or recalcitrant in its conduct.

We are of the opinion that Mystik stands on different footing and that its installation and operation of the equipment after the denial of its applications for permits justify the fines imposed.

We conclude that the finding by the Board of the violation of section 9(a) of the Act was improper and that the finding of violations of section 9(b) and Rule 3—2.110 and the imposition of a $3,500 fine were proper. In the latter regard the order of the Board should be affirmed. As to the first issue, this matter is to be remanded to the Board for further proceedings, not inconsistent herewith.

The judgment of the appellate court accordingly is affirmed in part and reversed in part, and the cause is remanded to the Board.

*Affirmed in part and reversed in part and remanded, with directions.*