CPC International, Inc., Petitioner, *v.* The Pollution Control Board *et al.*, Respondents.

(No. 59312; ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

First District (2nd Division)—September 23, 1975.

*Rehearing denied October 29, 1975.*

James W. Gladden, Jr., of Chicago (Mayer, Brown & Platt, of counsel), for petitioner.

William J. Scott, Attorney General, of Chicago (Richard W. Cosby and Michael A. Benedetto, Jr., Assistant Attorneys General, of counsel), for respondents.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Corn Products Corporation International, Inc. (CPC), appeals pursuant

to the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*) from an order entered by the Illinois Pollution Control Board (Board) finding it in violation of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1971, ch. 111½, par. 1009(a)[1]) in its operation of feed dryers and in violation of Rule 3—3.112[2] of the Board's *Rules and Regulations Governing Air Pollution* in its operation of boilers at its Bedford Park, Illinois, plant. The Board assessed penalties of $7,500 for the statutory violation and $2,500 for the rule violation.

The issues presented for review are:

(1) whether the Board erred in finding CPC in violation of section 9(a) of the Act and assessing a penalty without clearly indicating its consideration of the factors set forth in section 33(c) of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c));

(2) whether the Board erred in finding CPC in violation of Rule 3—3.112 and assessing a penalty without clearly indicating its consideration of the factors set forth in section 33(c) of the Act;

(3) whether the Board erred in finding CPC in violation of Rule 3—3.112 in that such finding is not supported by the evidence; and

(4) whether the Board erred in imposing fines totaling $10,000 where the imposition of a penalty will not aid in the enforcement of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*).

The Environmental Protection Agency (EPA), through the Attorney

---

[1] Section 9(a) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1009(a)) states:

"No person shall:

(a) Cause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants from other sources, or so as to violate regulations or standards adopted by the Board under this Act."

[2] Rule 3—3.112 of the *Rules and Regulations Governing Air Pollution* (1969) reads:

"3—3.112 Limitations for Combustion for Indirect Heating

Emissions of particulate matter from the combustion of fuel for indirect heating for new equipment shall be limited by the ASME Standard No. APS-1 dated June 15, 1966, 'Recommended Guide for the Control of Dust Emission-Combustion for Indirect Heat Exchangers.' For purposes of this Rule, the allowable emission shall be calculated from the equation (15) in the standard with $^{\circ\circ}max^2 = 50$ $\mu g/m^3$. Figure 2 in the standard may be used to estimate allowable emissions from a plant with a single stack. For a plant with multiple stacks the appropriate correction factor shall be applied. However, irrespective of stack height or number of stacks, the maximum allowable emission for any stack or plant shall be 0.6 pounds of particulates per million BTU input."

These rules have been continued in full force and effect by State of Illinois Air Pollution Control Regulations (1973), ch. 2, rule 114.

General of Illinois, on February 9, 1972, filed a complaint with the Board against CPC alleging that odorous emissions from its corn wet milling plant in the Village of Bedford Park, Illinois, violated section 9(a) of the Act. The complaint, further alleging that particulate emissions from the plant's boilers violated the Board's Rule 3—3.112, sought a hearing and prayed for an order both requiring CPC to cease and desist its violations and assessing penalties. A hearing was held and evidence taken. Subsequent to the hearing and prior to the entry of the order, CPC and the EPA entered into and filed with the Board a stipulation and proposal for settlement which was incorporated by reference into the order.

CPC employs 2,150 people at the plant in issue, 90 of whom are employed in the operation of the feed, germ, gluten and other process dryers. Though the emissions originated, apparently inherent to dryer operation, from all the dryers, the main source of emission and the sole concern of the proceedings below was the feed dryers.

In the summer of 1971, CPC began a comprehensive development of alternatives to reduce the odorous nature of these emissions. These investigations disclosed, in the summer of 1972, that odorous emissions could be reduced by 50% by changing the functions of the dryers. Instead of each of the four feed dryers independently drying all the various by-product ingredients at an average inlet temperature of 1000°, two dryers would be used to pre-dry fibrous materials at a higher inlet temperature —since such material elicited less odor. The other two dryers would be subsequently used to finish drying the fibrous materials and other by-products at a lower inlet temperature. Evidence was presented as to the difficulties encountered and expected with other control methods and experiments CPC was conducting to improve these methods.

As to the boilers, three are coal-fired and were installed in 1954. Two boilers installed in 1968 are gas-fired and replaced 10 coal-fired boilers which were no longer safe. Due to local ordinances [3] passed in 1970 limiting sulfur emissions from boilers, CPC attempted to convert to gas. These efforts were unsuccessful because of the unavailability of fuel which, indeed, prevented CPC from operating its existing gas-fired boilers at full capacity. Subsequently, CPC was able to obtain low sulfur coal from Appalachia at a higher ash content (a source of particulates) than was desired, promised or anticipated. This problem combined with a coal strike in October and November of 1971 created a situation where par-

---

[3] In 1970 the Village of Bedford Park and Cook County each passed ordinances limiting sulfur emissions from boilers.

ticulate emission was well in excess of the rate allowed by Rule 3—3.112. By March of 1972, this rate was reduced to below the allowed rate.

The area surrounding the plant is "pedominantly residential" to the east, northeast and southeast of the plant. The areas to the south, west and north of the plant are "predominantly industrial." At the hearing, 11 citizen witnesses for the EPA testified to smelling burnt food or corn odors two to three times a week, and that such emissions interfered with their health or enjoyment of life and property. Five citizen witnesses for CPC alleged the burnt corn odor did not bother them or interfere with their health or enjoyment of life and property.

In the stipulation and proposal for settlement incorporated by reference into the Board's opinion and order, CPC agreed to modify its feed drying operations by changing the functions as described above. Explicitly left to the discretion of the Board was whether the operation of the boilers had violated Rule 3—3.112 and whether penalties should be assessed for any violations involving either the feed dryers or boilers. The Board did find violations as to both the feed dryers, for which it assessed a $7,500 civil penalty and the boilers, for which it assessed a $2,500 civil penalty. Ill. Rev. Stat. 1971, ch. 111½, par. 1042.

## I.

The first issue presented to this court is whether the Board erred in finding CPC in violation of section 9(a) of the Act and assessing a penalty without clearly indicating its consideration of the factors set forth in section 33(c) of the Act. CPC contends the Board did so err and that such failure provides the appellate court with no basis for a thorough review. EPA contends the Board did not so err since it can be assumed from evidence in the record, as to each of these factors, that it did take these factors into account.

Section 9(a) of the Act prohibits the discharge of emissions which cause air pollution. Section 33(c) of the Act reads:

"(c) In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to:

(i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;

(ii) the social and economic value of the pollution source;

(iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and

(iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source."

This court held, in *Allied Metal Co. v. Pollution Control Board* (1st Dist. 1974), 22 Ill.App.3d 823, 318 N.E.2d 257, that vacation of the Board's order was required since, among other errors, no indication appeared in the opinion or order that the Board had taken all of the above factors into consideration in its decision. (22 Ill.App.3d at 832-34.) Two months after this opinion was rendered, the Illinois Supreme Court likewise considered the issue. In *Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill.2d 290, 296, 319 N.E.2d 794, the court held:

"The Board must take into consideration the factors referred to in section 33(c) and *must indicate* that it has done so in its written opinion *by stating the facts and reasons* leading to its decision." (Emphasis added.)

See also *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill.2d 204, 208, 326 N.E.2d 406.

■■ The supreme court, without describing the manner in which the Board in *Incinerator* had complied with section 33(c) of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c)), held that it had so complied. Comparing the Board's opinion and order, as reported at *Environmental Protection Agency v. Incinerator, Inc.* (1971), 2 Ill. P.C.B. Op. 505, with the Board's opinion and order in the present case, as reported at *Environmental Protection Agency v. CPC International, Inc.* (1973), 8 Ill. P.C.B. Op. 311, the following similarities and distinctions can be noted. (1) The *Incinerator* Board had, as here (8 Ill. P.C.B. Op. at 311-12), taken into account the testimony of numerous nearby residents as to the effects and presence of the particulate matter there involved, as well as expert testimony in this regard. (2 Ill. P.C.B. Op. at 508-09.) (2) The *Incinerator* Board, as here (8 Ill. P.C.B. Op. at 311), described the plant and its characteristics, including employees, function, hours and methods of operation. (2 Ill. P.C.B. Op. at 506-07.) This of itself, which is all that appears in the present opinion as to the section 33(c)(ii) standard, is not sufficient to support a statement that the Board considered the social and economic value of the pollution source. The Board in *Incinerator*, however, met this standard by going on to discuss the hardships which would be imposed upon Incinerator's employees by the Board's cease and desist order and concluded that the employees would have to blame the company for its "dilatory" tactics during the course of this suit as the cause of the hardship. (2 Ill. P.C.B. Op. at 511.) (3) The Board in *Incinerator* noted that the area was "chiefly industrial" but that this characteristic "does not entitle the facility to create a nuisance for its

neighbors." (2 Ill. P.C.B. Op. at 512.) No indication appears in the opinion in the present case that the Board took any such evidence as to the suitability of the pollution source to the area into account. (4) The Board in *Incinerator* examined in detail the evidence presented as to the feasibility of technological alternatives (2 Ill. P.C.B. Op. at 509-10), thus clearly indicating it considered the fourth factor. No such consideration is evident in the Board's opinion in the present case.

Though there is evidence in the record as to each of these factors, this court cannot, without a clear indication in the Board's written opinion that the factors were considered, determine what evidence, if any, meets the standards of section 33(c). We, therefore, vacate the Board's order, including the penalty of $7,500, with regard to the feed dryers. We remand the cause to the Board for its determination and disposition of the issues of violation of section 9(a) and assessment of any penalty after considering the evidence in the record and the statutory standards of section 33(c).

## II.

The second issue for this court's determination is whether the Board erred in finding CPC in violation of Rule 3—3.112 in the operation of its boilers without clearly indicating its consideration of the factors set forth in section 33(c).

Rule 3—3.112 sets forth the limitations for combustion for indirect heating. The rule sets forth the standard for allowable emissions of particulate matters. Then the actual emissions from a specific operation must be compared to the allowable emissions.

CPC urges that the findings of the Board, as to the operation of the boiler house, is not supported by the evidence. In this context, it contended that error resulted from the Board's failure to state its rationale for its order as to the boilers in that significant judicial review is thereby impeded. The EPA contends that the Board's opinion does provide sufficient rationale for significant judicial review.

The question should have been posed, however, in terms of the specific statutory requirements of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*). The factors set forth in section 33(c) of that Act are to be taken into consideration by the Board in "making its orders and determinations * * * bearing upon the reasonableness of the omissions" without regard to the statutory or regulatory base for the findings. Additionally, the Board's *Rules and Regulations Governing the Control of Air Pollution* have a statutory base in section 10 of the Act. We therefore hold that findings of violations of Rules by the Board in "making its

orders and determinations" are equally subject to the requirements of section 33(c) of the Act.

Holding as we do, we can perceive no reason why the supreme court's holding in *Incinerator* would not equally apply here. With regard to the first standard (section 33(c)(i)), we find no indication in the opinion (8 Ill. P.C.B. Op. at 311), that any of the effects of the particulate emission from the boilers on the surrounding area and population were considered. Although some evidence as to the effects of the particulate emissions was presented, the Board's opinion only considers the effects of the odors. (8 Ill. P.C.B. Op. at 311-12.) As with the feed dryers, there was insufficient indication in the order that the social or economic value of the pollution source or the suitability of the source to the area were considered. Finally, although the opinion discusses at length the actual emissions and tests conducted to determine the extent of emission (8 Ill. P.C.B. Op. at 312-13), no indication appears in the opinion that the Board considered the technical practicability and economic reasonableness of reducing or eliminating the emissions. Thus, it does not appear that the Board considered *any* of the factors of section 33(c) with regard to the boilers.

■■ We have previously discussed at length the importance of clearly indicating the consideration of these factors. (*Allied Metal Co. v. Pollution Control Board*, 22 Ill.App.3d 823, 833.) In light of the failure of the Board to comply with section 33(c) in finding violations of both section 9(a) and its Rule 3—3.112 and assessing fines totaling $10,000, we hereby vacate the order of the Board and remand the cause to the Board for its determination and disposition of the issues of such violations and penalties after considering the evidence in the record and the standards set forth in section 33(c).

■■ So holding, we do not, therefore, reach the issues of the sufficiency of the evidence or the appropriateness of the penalties. It should be noted, however, that the record, in our opinion, does establish a substantial effort on the part of CPC to correct the problems complained of by the EPA. In light of the efforts of CPC to comply with the Act, the Board should consider whether the imposition of a penalty would aid in the enforcement of the Act. A punitive penalty should not be levied. In this connection the Board should be guided by the purpose of the Act as set forth in section 2 and the supreme court's observations with respect to penalties in *Southern Illinois Asphalt Co. v. Pollution Control Board*, *supra*, and *City of Monmouth v. Pollution Control Board* (1974), 57 Ill.2d 482, 490, 313 N.E.2d 161.

The order of the Pollution Control Board in this cause is vacated and

754

the cause is remanded to the Board for such action as it considers necessary in accordance with the views expressed herein.

Order vacated and remanded.

STAMOS and LEIGHTON, JJ., concur.