George WHEELER et al., Petitioners,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,

1901 N Street Limited Partnership, Intervenor.

No. 12632.

District of Columbia Court of Appeals.

Argued May 2, 1978.

Decided Nov. 28, 1978.

Sari B. Marmur, Washington, D.C., with whom Jason Newman, Washington, D.C., was on the brief, for petitioners.

Edward E. Schwab, Asst. Corp. Counsel, for respondent. Richard W. Barton, Depu-

ty Corp. Counsel, Washington, D.C., also entered an appearance for respondent. Respondent adopted the brief of intervenor.

John F. McCabe, Jr., Washington, D.C., with whom Norman M. Glasgow, Washington, D.C., was on the brief, for intervenor.

Before NEBEKER, YEAGLEY and FERREN, Associate Judges.

NEBEKER, Associate Judge:

Petitioners have asked us to review a grant by the Board of Zoning Adjustment (the Board) of a special exception for the construction of a professional office building at 1901 N Street, N.W., which is in a special purpose district.[1] Petitioners fault the Board's decision for failing (1) to make adequate findings of fact, (2) to have sufficient evidentiary support for the findings of fact and conclusions of law which were made, and (3) to give "great weight" to the issues and concerns raised by the Advisory Neighborhood Commission (ANC). For the reasons stated below, we find that the Board fulfilled the statutory requirement for granting a special exception, and we affirm its order.

## I. The BZA Proceedings

A public hearing was held May 17, 1977, on the intervenor's application for the special exception. The intervenor presented two expert witnesses who testified that the requirements of D.C. Zoning Reg. § 4101.-42[2] were met. An official from the Munici-

---

1. A motion to dismiss was granted as to the Advisory Neighborhood Commission and to the ANC commissioners in their official capacities, pursuant to *Kopff v. D. C. Alcoholic Beverage Control Board*, D.C.App., 381 A.2d 1372 (1977). The remaining petitioners are the Dupont Circle Citizens Association and the nine ANC commissioners in their individual capacities.

2. The following sections are from the District of Columbia Zoning Regulations (1977):

> 4101.4 The following uses are permitted if approved by the Board of Zoning Adjustment subject to the conditions specified . . . below in each case:
>
> \* \* \* \* \* \*

> 4102.42 The construction of new office *buildings* for a *chancery, nonprofit organization*, labor union, an architect, dentst [sic], doctor, engineer, lawyer, or similar professional person, provided that: (As amended Feb. 19, 1959.)
> (a) The use is in harmony with existing uses on neighboring or adjacent property;
> (b) The use will not create dangerous or other objectionable traffic conditions;
> (c) The Board may require such special treatment in the way of screening of *buildings, accessory uses*, signs and other facilities as it shall deem necessary to protect the value of neighboring or adjacent residential property; and

pal Planning Office (MPO) testified and submitted an MPO report recommending approval of the application. In addition, after the hearing, the D.C. Department of Transportation submitted a favorable report.

Several witnesses, including two ANC representatives, testified in opposition to the application. The specific points raised by the ANC representatives were (1) that the proposed building would threaten the stability of the special purpose district, (2) that it would not be in harmony with nearby buildings, (3) that traffic congestion would significantly increase, (4) that area parking would be affected adversely, (5) that dangers to pedestrians would increase, and (6) that the building would have other undesirable physical characteristics.[3]

The Board issued an order granting the special exception on August 16, 1977. Petitioners' motion for reconsideration, claiming that the Board failed to give "great weight" to the issues raised by ANC, was denied September 16, 1977. This petition for review followed.

II. Adequacy of the Findings

The first deficiency in the Board's order, according to the petitioners, is that the findings of fact are inadequate to support the grant of the application. Petitioners contend that the Board did not make findings of fact at all—but rather merely recited the required statutory language. Petitioners fault the Board for making only generalized reference to the record, without indicating the evidence it found persuasive.

 The Board is required to supplement its decision in a contested case with findings of fact. Those findings must "consist of a concise statement of the conclu-

sions upon each contested issue of fact." D.C. Code 1978 Supp., § 1–1509(e). In addition, D.C. Zoning Reg. § 8202.64 requires that "full reasons" be given for each decision. We recognize that neither repetition of the statutory language nor a simple summary of the evidence satisfies these requirements. *See A.L.W., Inc. v. D.C. Board of Zoning Adjustment*, D.C.App., 338 A.2d 428 (1975); *Palmer v. D.C. Board of Zoning Adjustment*, D.C.App., 287 A.2d 535 (1972). Nonetheless, we find the Board's findings to be sufficiently detailed so as to provide this court with the "basic [and] underlying"[4] reasons for the conclusions entered by the Board in making its decision. We thus are able to assess "the rationality of an evidentiary support for" the Board's order. *See Kopff v. D.C. Alcoholic Beverage Control Board*, D.C.App., 381 A.2d 1372 (1977).

Harmony with existing nearby uses was a contested issue at the hearing.[5] The Board found such harmony with specific reference to the "facade . . . and . . . other architectural details which make [the building] compatible with area residential dwellings." In addition, comparative reference was made to nearby buildings of the same height as the proposed edifice as well as to others put to similar office and office-supported use. Our role does not include making a contrary aesthetic judgment.

The findings regarding dangerousness or other objectionable traffic conditions[6] are similarly detailed. In addition, the Board incorporates in its conclusions the conclusions and rationale of the Department of Transportation.

 In addition to the claimed general inadequacy, petitioners argue that the findings are statutorily incomplete because the Board did not make an explicit finding on the question of whether the building would

---

(d) Before taking final action on an application for such use the Board shall submit the application to the District of Columbia Department of Transportation for review and report. [Emphasis in original.]

3. The witnesses listed these characteristics as (1) the obstruction of adjacent off-street parking, (2) the obstruction of alley traffic by trucks using the loading berth, (3) unsightly and haz-

ardous trash facilities, and (4) the obstruction of light and air to adjacent buildings.

4. *Palmer v. District of Columbia Board of Zoning Adjustment, supra* at 538.

5. *See* D.C. Zoning Reg. § 4101.42(a).

6. *See* D.C. Zoning Reg. § 4101.42(b).

promote neighborhood stability. Although petitioners claim that the stability of the character of the special purpose district was an issue at the hearing, the mere fact petitioners presented testimony on this point does not make it an issue which the Board is required to resolve. To the contrary, the structure and purpose of the Zoning Regulations are such that once the Board has determined that an application satisfies D.C. Zoning Reg. § 4101.42,[7] it follows as a matter of law that the application is consistent with the designed purpose of the special purpose district.

Section 4101.1 of the Zoning Regulations details the purpose of the special purpose district:

> The Special Purpose District is designed to stabilize those areas adjacent to the C–4 District which contain office, other Central Business District supporting uses, as well as desirable sites for residential *buildings*. Offices, *apartment houses, hotels*, and controlled parking facilities are to be encouraged therein and the *district* will be generally restricted to the periphery of the C–4 District. [Emphasis in original.]

The subsequent subsections of the regulations were designed by the Zoning Commission to implement this purpose. Thus, "stability" as such is not an issue—rather it is the expected result of the Board's adherence to the regulations. *See generally* note 10 *infra*.

III. Substantiality of the Evidence

■ Having determined that the Board made adequate findings of fact, we next consider whether those findings and the conclusions of law which follow therefrom are "supported by and in accordance with the reliable, probative, and substantial evidence." D.C. Code 1978 Supp., § 1–1509(e).

Petitioners' arguments on this question amount to the assertion that the Board's findings were unsupported by the evidence because conflicting evidence was presented, and there was nothing to indicate why the Board found some evidence more persuasive than other evidence. "Substantial evidence" repeatedly has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Kopff, supra* at 1387; *Wallace v. District Unemployment Compensation Board*, D.C.App., 294 A.2d 177 (1972). Thus, the fact the record contains some evidence which is antithetical to the Board's conclusion does not mean the decision is unsubstantiated.

■ The Board is required to support its findings with " 'more than a mere scintilla' of rationally connected evidentiary support." *Kopff, supra* at 1387. Our review of the findings and the record reveals that the Board has fulfilled this requirement.

IV. "Great Weight"

Petitioners also contend that the Board failed to carry out the mandate of D.C. Code 1978 Supp., § 1–171i(d), the pertinent part of which provides:

> Each [Advisory Neighborhood] Commission so notified . . . shall forward its written recommendations . . [to] the appropriate agency . . . The issues and concerns raised in the recommendations of the Commission shall be given *great weight* during the deliberations by the governmental agency and those issues shall be *discussed in the written rationale* for the governmental decision taken. [Emphasis added.]

Subsequent to the Board's action in this case, this court elaborated on the meaning of the "great" requirement in *Kopff, supra* at 1384:

> It means . . . that an agency must elaborate, with precision, its response to the ANC issues and concerns. . . . to deal with it in detail, without slippage. . . . That is, the agency must articulate why the particular ANC itself, given its vantage point, does—or does not—offer persuasive advice under the circumstances.

* * * * * *

7. *See* note 2 *supra*.

"[G]reat weight" implies explicit reference to each ANC issue and concern *as such*, as well as specific findings and conclusions with respect to each. [Emphasis in original.]

Petitioners contend that the Board's summarization of the six [8] ANC concerns in one finding did not "elaborate, with precision," a response to each concern as *Kopff* requires.

At the outset, we note that counsel for respondent admitted at oral argument that the findings would read differently had they been written after the *Kopff* decision. However, while recognizing that the findings fall short of the *Kopff* "great weight" standard, both respondent and intervenor argue that the Board's findings, written without the guidance of *Kopff*, substantially comply with the "great weight" requirement.

■ We note that *Kopff* did not modify or overrule a previously applicable rule of law. *Kopff* merely interpreted, albeit for the first time, a law in effect at the time of the BZA hearing and decision. We are concerned, however, that for administrative decisions rendered prior to the guidance afforded by *Kopff*, strict adherence to the specific requirements of that opinion not only might serve no substantive purpose but could well result in inequity. *E. g., Allen v. State Board of Elections*, 393 U.S. 544, 571–72, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). We therefore conclude that the sensible and equitable approach is to require substantial compliance with D.C. Code 1978 Supp., § 1–171i(d) for cases in which the administrative decision preceded the date of that opinion. *See, e. g., Incinerator, Inc. v. Pollution Control Board*, 59 Ill.2d 290, 319 N.E.2d 794 (Ill.1974).[9]

■ "Substantial compliance" is "such compliance with [the] essential requirements of the . . . provision as may be sufficient for the accomplishment of the purposes thereof." Opinion of Justices, 275 A.2d 558 (Del.1971). It "means actual compliance in respect to the substance essential to every reasonable objective of the statute." *Stasher v. Harger-Haldeman*, 58 Cal.2d 23, 22 Cal.Rptr. 657, 660, 372 P.2d 649, 652 (1962) (emphasis deleted); *City of Fort Wayne v. Cameron*, 349 N.E.2d 795, 800 (Ind.App.1976). Consequently, a determination of whether the BZA has substantially complied with D.C. Code 1978 Supp., § 1–171i(d) requires first an examination of the "purposes" or "reasonable objectives" of the "great weight" provision, and second a decision of whether the BZA's findings sufficiently satisfy these purposes and objectives.

■ In *Kopff*, we observed that "the very statutory scheme of the ANC Act is designed to assure effective presentation of neighborhood views through the ANC instrumentality." *Id.* at 1377. We then concluded that D.C. Code 1978 Supp., § 1–171i(d), the "great weight" provision, was intended to assure that such views, ex-

8. Petitioners claim that the ANC raised six distinct issues and concerns. See p. 88, *supra*.

9. The Illinois courts have faced a situation analogous to the one we face here. In *Incinerator, supra*, the Illinois Supreme Court stated that Illinois Pollution Control "Board was not as specific as it might have been in making written findings as to each of [certain statutory] criteria," and that the court "would expect that decisions of the Board rendered after the date of this opinion will be more specific in this regard." 59 Ill.2d at 299, 319 N.E.2d at 798–99. The court, however, determined that "there was substantial compliance with the Act." *Id.* at 299, 319 N.E.2d at 798. When the Illinois intermediate appellate court, in *Baker v. Illinois Pollution Control Board*, 32 Ill.App.3d 660, 336 N.E.2d 325 (1975), considered findings that the Board made prior to the Supreme Court's ruling in *Incinerator*, the lower court implicitly employed the same substantial compliance standard that the Supreme Court employed in *Incinerator*, 32 Ill.App.3d at 662, 336 N.E.2d at 327. Our position, with regard to *Kopff*, is analogous to the *Baker* court's position with regard to *Incinerator*.

On at least one other occasion we have expressly employed the doctrine of substantial compliance, as we have authority to do under the last sentence of D.C. Code 1978 Supp., § 1–1510 (court may invoke the rule of prejudicial error). *See Citizen's Ass'n of Georgetown, Inc. v. District of Columbia ABC Board*, D.C. App., 305 A.2d 861 (1973) (Board substantially complied with court's order on remand).

pressed by means of the ANC "issues and concerns" raised in "written recommendations" to the agency, § 1–171i(d), would receive "specific attention" by government agencies. *Kopff, supra* at 1384. More precisely, we concluded that the section "is a statutory method of forcing an agency to come to grips with the ANC view—to deal with it in detail . . ." *Id.* The statutory "great weight" mandate and its specific requirements delineated in *Kopff,* are intended to make certain that neighborhood views receive "specific attention," *id.,* by the agency concerned. Thus, for cases in which an administrative determination was made prior to *Kopff,* if the record reveals that the agency was cognizant of and paid attention to the pertinent and specific neighborhood issues and concerns raised by the ANC's then we will not reverse merely because the decision does not satisfy the specific prescriptions of *Kopff.*

▇▇▇▇ After reviewing the Board's August 16 order, we conclude that the Board demonstrated its cognizance and consideration of the ANC's concerns. The petitioner's claim that the Board should have dealt with six issues, which we list in the first section of this opinion. We hold, *supra,* that the first "issue," stability, is not an issue. The second issue, harmony, is specifically mentioned as an ANC concern in the Board's tenth finding and is discussed in the Board's third, fifth and eighth findings and its opinion. The third, fourth and fifth issues concern "traffic congestion," "parking," and "danger to pedestrians." These three issues are essentially included in the generic topic "traffic conditions," which the Board identified in its tenth finding as an ANC concern. The Board discussed "traffic conditions" in its fourth, sixth, seventh and ninth findings and in its opinion. The last ANC concern, that the building would have

the "undesirable physical characteristics" of unsightly trash facilities and destruction of light and air to adjacent buildings, is irrelevant under § 4101 of the zoning regulations and therefore the Board's failure to consider and discuss this issue is not error.[10] We hold that the Board substantially complied with the statutory requirement that the ANC "issues and concerns . . . be given great weight [and] be discussed in the written rationale for the governmental decision taken." D.C. Code 1978 Supp., § 1–171i(d).

Although the petitioners are arguably correct in asserting that the Board did not "elaborate, with precision, its response to the ANC issues and concerns," its treatment of the issues and concerns, as discussed in the immediately preceding paragraph, substantially complied with § 1–171i(d). The Board may have failed to "articulate why the particular ANC itself, given its vantage point, does—or does not—offer persuasive advice under the circumstances," and therefore its decision would not pass muster under *Kopff.* This possible failure, however, does not preclude a finding of substantial compliance under the circumstances here.

Accordingly, the decision of the Board is affirmed.

---

10. *See Stewart v. D.C. Board of Zoning Adjustment,* D.C.App., 305 A.2d 516 (1973) (Board has no authority to grant a special exception for a use other than those stated in D.C. Zoning Reg. § 4101). The factors that the BZA may consider in ruling on an issue are restricted by the regulations. The ANC, as an advisor, *see Kopff v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 381 A.2d 1372, 1384 (1977), is necessarily similarly confined by the regulations. The Council did not intend to empower the Commissions to expand the factors that a board or agency may otherwise lawfully consider in reaching its decision. Thus, we interpret "issues and concerns," as used in D.C. Code 1978 Supp., § 1–171i(d), to encompass only legally relevant issues and concerns.