PROCESSING AND BOOKS, INC., *et al.*, Petitioners, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

(No. 73-204;

Second District (2nd Division)—May 7, 1975.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan (Lewis D. Clarke and John F. Voegtle, of counsel), for petitioners.

William J. Scott, Attorney General, of Chicago (Frederic J. Entin, Thomas J. Immel, and Richard W. Cosby, Assistant Attorneys General, of counsel), for respondents.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Petitioners seek review of the decision of the Illinois Pollution Control Board (Board) which found them in violation of section 9(a) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, § 1009(a)). An order was entered on May 10, 1973, fining petitioners $3000 as a penalty for the violation and, on May 31, 1973, a supplemental order was filed directing petitioners to cease and desist violation of section 9(a) of the Act.

Petitioners are Processing and Books Corporation, which owns Hawthorne Farm, and National Mellody Farm Fresh Egg Company, which owns and operates a poultry operation located on a portion of the farm. In prior years, the farm had been used for the raising of poultry as well as for other agricultural purposes. Commencing in 1965, the chicken population was increased from about 18,000 to between 290,000 and 330,000 chickens. Over this period, petitioners invested about $1,800,000 in equipment for the expanded egg-producing operation including the installation of a dryer to dehydrate chicken manure and incinerators to dispose of dead chickens.

The Environmental Protection Agency (Agency) filed a complaint with the Board against petitioners on April 7, 1972, charging them with operating the egg farm in such manner as to unreasonably interfere with the health and enjoyment of life and property of persons residing, working or otherwise frequenting the area, such operation causing air pollution in violation of section 9(a). The Agency introduced testimony of residents and two agency engineers, all of whom testified to smelling various odors including that of chicken manure and of burning chickens and chicken feathers. Petitioners introduced citizen and expert testimony refuting assertions that odors from the farm were frequent and objectionable, and testimony regarding their financial investment in the operation, the expense of relocation, the suitability of the present site, and the financial feasibility of installing other forms of drying systems.

It was the determination of the Board that the operation of the manure dryer and incinerators was the farm's primary source of odors

and that some odors emanated from the chicken houses and from the spreading of manure on the land. The order found that petitioners violated section 9(a) by emitting odors which unreasonably interfered with the enjoyment of life or property, one of the two categories of air pollution created by section 3(b) of the Act (Ill. Rev. Stat. 1971, ch. 111½, § 1003(b). *Incinerator, Inc. v. Pollution Control Board,* 59 Ill.2d 290, 295 (1974); *Mystik Tape v. Pollution Control Board,* 60 Ill.2d 330 (1975).

Section 9(a) of the Act provides that:

"No person shall:

(a) Cause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants from other sources, or so as to violate regulations or standards adopted by the Board under this Act;

* * *"

Within section 3(b) (Ill. Rev. Stat. 1971, ch. 111½, § 1003(b)) "air pollution" is defined as:

"* * * the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, or animal life, to health, or to property, or to unreasonably interfere with the enjoyment of life or property."

Because one of the many issues raised is dispositive of the case, we address only that issue.

Petitioners contend that the Board failed to make necessary findings of fact in that it did not consider the facts and circumstances bearing upon the reasonableness of emissions and discharges as required by Section 33(c) of the Act (Ill. Rev. Stat. 1971, ch. 111½, § 1033(c)). This section of the Act provides as follows:

"In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to: (i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people; (ii) the social and economic value of the pollution source; (iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and (iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source."

Section 33(a) of the Act (Ill. Rev. Stat. 1971, ch. 111½, § 1033(a)) provides:

> "After due consideration of the written and oral statements, the testimony and arguments that shall be submitted at the hearing, * * * the Board shall issue and enter such final order, or make such final determination, as it shall deem appropriate under the circumstances. In all such matters the Board shall file and publish a written opinion stating the facts and reasons leading to its decision. * * *"

■■ In *City of Monmouth v. Pollution Control Board*, 57 Ill.2d 482, 485-87 (1974), the court upheld the constitutionality of section 9 against the challenge that it did not contain sufficient standards for determining what constitutes air pollution. The court found that section 9(a), when read in conjunction with sections 3(b), 3(d) and 33(c), provided sufficient standards to furnish guidelines for the Board and to protect a party against arbitrariness. The criteria of section 33(c), establishing reasonableness of emissions, are therefore clearly integral and essential to a determination of whether or not a party is in violation of section 9(a). In determining if particular air pollution unreasonably interferes with the enjoyment of life and property, the court's interpretation of the Act requires that the Board not only take into consideration the criteria referred to in section 33(c), but give indication of such consideration in its written opinion by stating the facts and reasons leading to its determination. *Mystik Tape v. Pollution Control Board*, 60 Ill.2d 330 (1975).

■■ In the instant case, the Board's opinion was primarily a restatement of the testimony of agency witnesses, *i.e.*, that the odor from the farm interfered with their personal comfort and enjoyment of their property. It reveals that the only criteria of 33(c) considered was "(i) the character and degree * * * of interference with the protection of * * * the general welfare and physical property of the people." The other three criteria required by section 33(c) were not mentioned as having been considered in the Board's decision. This is understandable since the agency introduced substantial evidence on the criteria of section 33(c)(i), and some evidence relating to section 33(c) (iii), but no evidence on sections 33(c)(ii)) or (iv). By failing to introduce evidence on each criteria of 33(c), the Agency failed to meet its burden of proof. (*Incinerator, Inc. v. Pollution Control Board*, 59 Ill.2d 290, 299-300 (1974).) In summary, the Board's opinion "does not indicate that it took into consideration the various factors, bearing upon 'reasonableness,' as set forth in section 33(c)." (*Mystik Tape v. Pollution Control Board*, 60 Ill.2d 330, 337 (1975).) Were these merely technical

omissions, the opinion failing to include consideration of available evidence, the error would warrant remand. Here, however, the State's failure to introduce any evidence on two of the criteria requires that the order be reversed.

Order reversed.

RECHENMACHER, P. J., and DIXON, J., concur.