WELLS MANUFACTURING COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

First District (4th Division)    No. 76-440

Opinion filed April 21, 1977.

Joseph S. Wright, Jr., and Michael D. Freeborn, both of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago (Michael A. Benedetto, Jr., Assistant Attorney General, of counsel), for respondents.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from an order of the Illinois Pollution Control Board (Board). The order of the Board found Wells Manufacturing Company (Wells) to be in violation of sections 9(a) and (b) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, pars. 1009(a)(b)) and assessed a fine of $9,000. It also found Wells to be in violation of Rule 103(b)(2) of the Board's Air Pollution Regulations and required an abatement plan, performance bond and certain progress reports.

The issues on appeal are (1) whether the findings of the Board are in error, (2) whether the Board's dismissal of the permit appeal and finding of a violation for failure to have a permit were in error, (3) whether the Board's abatement order and related requirements were in error, and (4) whether the fine of $9,000 was in error.

The facts of the case are, Wells operates an iron foundry in Skokie, Illinois, about one-half mile from the village of Morton Grove. The plant is located in an area zoned for heavy industry and was constructed in 1947. The plant produces from 500 to 1,000 types of castings for a large variety of industries. The plant employs about 500 workers who work in three shifts, around the clock. The payroll is between 5 and 6 million dollars per year. The principal complainants in this suit are the people who live in the village of Morton Grove. Their complaints brought the Illinois Environmental Protection Agency and the other defendants into the suit. It is their contention the foundry operation causes offensive odors to be released into the air and this causes them to feel ill. After extensive hearings before the Board, it found Wells guilty of releasing offensive odors from the plant and guilty of failing to possess an operating permit, as required by section 9(b) of the Environmental Protection Act.

■■ The standards for "[unreasonable interference] with the

enjoyment of life or property" (Ill. Rev. Stat. 1975, ch. 111½, par. 1003(b)) were set by our supreme court in *Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill. 2d 290, where the court said the Board should take into account (1) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people; (2) the social and economic value of the pollution source; (3) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and (4) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source. In the instant case we feel the Board has not amply considered all of these factors before coming to its decision. We shall apply them on review.

There were a number of witnesses for the Environmental Protection Agency, including residents of the area and personnel from Niles West High School. They all testified they did have some mild discomfort which they attributed to the odors that came from Wells. Wells changed the makeup of the resin they used in April of 1971. It is agreed by both sides that the main source of the unpleasant odor was the resin. Four sets of tests by an independent consultant at various times over a four-year period after April 1971 showed the odor emission was cut from 60 to 90 percent. The odor which was emitted could only be detected within the immediate area of the plant. It is hard for us to believe such changes could not be detected.

The social and economic value of the plant is evident from the opinion of the Board itself. After noting the employment of Wells and its annual payroll, as well as Wells' importance to the various industries Wells supplies, the Board goes on to say:

> "The Board finds the unrefuted evidence presented sufficiently establishes the social and economic value of the Wells facility as a source of necessary industrial parts and as an employer." 20 Ill. P.C.B. Op. 135, 146.

The third criteria is the suitability of the area and the question of the priority of location. The Wells facility was constructed and in operation in 1947. It is located in an area which is zoned for heavy industry and in fact is populated by heavy industry. It is not clear from the record exactly when the various complaining witnesses moved into the area, but it is apparent that the residential area involved here was not developed until some time in the 1950's. Niles West High School was opened in 1958. It is clear both the residents of the area and Niles West High School were well aware of the nature of the area when they moved in. This is especially true of the High School, which bought the land for the school from Wells. It is not reasonable for either the residents or the school to complain about

Wells when they had, or should have had, after a cursory examination of the area, full knowledge of the fact they were moving next to a heavily industrialized district. Wells has been engaged in exactly the same business for 30 years. There is no new procedure that has suddenly been sprung upon the residents or on the High School. The fact there is heavy manufacturing going on a half mile away should come as no surprise to the residents. When they moved there, they were on notice of the possibility that some of the nuisances inherent to heavy manufacturing could affect them.

With regard to the technical feasibility of pollution control devices that could eliminate the odor or discharge from the plant, the Board produced three "experts," who in fact are three competing salesmen who had failed to sell their devices to Wells. These "experts" each testified that only their device could possibly control any odor from the Wells plant. Each also testified the other two devices offered by their competitors and fellow "experts" could never possibly control the odor emitted from the Wells plant. We find this "expert" testimony to be self-serving attempts by these salesmen in order to make a sale. It is clear from the record there is no working model anywhere in existence to completely control the odor from the foundry. Wells has made a number of attempts to eliminate the odor from the foundry, at its own expense. According to an independent testing laboratory, the odor emitted from the plant has been cut by 60 to 90 percent. Unless and until a more efficient means of cutting the emissions from the plant is found, it is unreasonable to expect Wells to do more. The one means of cutting the emissions that was advocated by the Environmental Protection Agency, the "packed tower" scrubbing system, was found to be a failure when used at another foundry.

We note when Wells advised the Board as to the fact Wells had been able to reduce emissions by 60 to 90 percent, the Board made no response at all, and then denied Wells a permit. During the course of oral argument, counsel for the Board was questioned as to the lack of response to this attempt by Wells to reduce pollution. Counsel for the Board indicated the Board did not consider this attempt by Wells significant. It is clear from this response the Board, no matter what Wells did, was predisposed to finding against Wells. This court considers a reduction in emissions of 60 to 90 percent to be a very obvious indication of Wells' good faith attempt to resolve the problem of odors emanating from the plant. Wells should be granted an operating permit immediately.

The question of the fine imposed on Wells is also indicative of the Board's attitude toward Wells. A fine is for a deliberate and intentional disregard of the law. We do not find this in the instant case. Wells has made a number of attempts to comply with the Board's wishes, but what the Board expects them to do is impossible. The fine of $9,000 is arbitrary,

capricious and unreasonable. This fine is completely unwarranted by this record.

■■ For the reasons stated herein, we find the order of the Illinois Pollution Control Board to be unreasonable, capricious and arbitrary. Accordingly, the order of the Illinois Pollution Control Board is reversed and the Illinois Pollution Control Board is ordered to grant Wells an operating permit under section 9(b) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1009(b)) forthwith.

Reversed.

LINN and JOHNSON, JJ., concur.