(Nos. 49643, 49645 cons.—

WELLS MANUFACTURING COMPANY, Appellee, v. THE POLLUTION CONTROL BOARD *et al.*—(The Environmental Protection Agency, Appellant.)

*Opinion filed Oct. 6, 1978.—Rehearing denied Dec. 1, 1978.*

228

William J. Scott, Attorney General, of Springfield (Michael A. Benedetto, Jr., Assistant Attorney General, of Chicago, of counsel), for appellant Environmental Protection Agency.

Michael R. Berman, of Chicago, for appellant Citizens for a Better Environment.

Rooks, Pitts, Fullagar & Poust, of Chicago (Joseph S. Wright, Jr., and Dixie L. Laswell, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This case involves consolidated complaints by the Environmental Protection Agency (Agency) and Citizens for a Better Environment (CBE) against Wells Manufacturing Company (Wells). The complaints allege violations of sections 9(a) and 9(b) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, pars. 1009(a), (b)) concerning air pollution and failure to possess an operating permit. After extensive hearings, the Illinois Pollution Control Board (Board) found Wells guilty of air pollution and failure to possess a permit and levied fines of $8,500 and $500 respectively. The Board additionally ordered that an abatement plan, a performance bond, and periodic progress reports be submitted. On review (Ill. Rev. Stat. 1971, ch. 111½, par. 1041; ch. 110, par. 264 *et seq.*) the Appellate Court for the First District found the Board had inadequately considered certain statutory factors, and after itself reviewing the relevant criteria, determined the Board's order was unreasonable, capricious and arbitrary. Accordingly, the appellate court reversed the Board's order and instructed the Board to grant Wells an operating permit. (48 Ill. App. 3d 337.) We granted leave to appeal.

Wells operates an iron foundry in an industrial area of Skokie, immediately adjacent to Niles Township Community High School, West Division, and about one-half mile from a residental section of the village of Morton Grove. The foundry, which employs approximately 500 persons, was constructed in 1947 and produces castings for use in various industries. Wells is, in fact, the sole supplier of certain parts for automobile-power-steering units. A casting is a part formed by adding molten metal to a mold. As relevant here, Wells' use of phenol-formaldehyde resins to mold the castings in shell molds produces odors characterized as resembling those from burning rubber.

The amended complaints filed by the Agency and CBE against Wells allege these odors violate section 9(a) of the Environmental Protection Act, which specifies that no person shall "[c]ause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois ***" (Ill. Rev. Stat. 1971, ch. 111½, par. 1009(a)). A "contaminant" is defined to include "any odor" (Ill. Rev. Stat. 1971, ch. 111½, par. 1003(d)); and "air pollution" is defined as "the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, or animal life, to health, or to property, *or to unreasonably interfere with the enjoyment of life or property."* (Emphasis added.) (Ill. Rev. Stat. 1971, ch. 111½, par. 1003(b).) The Agency's amended complaint also alleges a related violation of section 9(b) of the Environmental Protection Act, which proscribes the operation of any facility capable of causing air pollution without a permit (Ill. Rev. Stat. 1971, ch. 111½, par. 1009(b)).

The principal difficulty in cases such as this lies in the need to define the level at which interference becomes "unreasonable" in this statutory context. (See *Processing & Books, Inc. v. Pollution Control Board* (1976), 64 Ill. 2d 68, 76-77.) The Board must balance the costs and benefits of abatement in an effort to distinguish "the trifling inconvenience, petty annoyance or minor discomfort" from "a substantial interference with the enjoyment of life and property." See *Processing & Books, Inc. v. Pollution Control Board* (1976), 64 Ill. 2d 68, 77, and cases there cited; Currie, *Enforcement Under the Illinois Pollution Law,* 70 Nw. U.L. Rev. 389, 416-19 (1975).

Section 33(c) of the Environmental Protection Act specifies several factors which the Board must consider in arriving at its decisions:

"In making its orders and determinations, the Board

shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to:

> (i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;
> (ii) the social and economic value of the pollution source;
> (iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and
> (iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source.
> ***" (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c).)

The unreasonableness of alleged air pollution of the type involved here must be determined with reference to these statutory criteria. *Mystik Tape v. Pollution Control Board* (1975), 60 Ill. 2d 330; *Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill. 2d 290; *City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482.

The Act places the burden of proof on the Agency or other complainant to show that the respondent has caused or threatened to cause air pollution, which in the context of this case means unreasonable interference with the enjoyment of life or property. (Ill. Rev. Stat. 1971, ch. 111½, par. 1031(c); *Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill. 2d 290, 300.) This does not mean, however, that the Board must find against the respondent on *each* of the four statutory criteria of section 33(c), or that the Board is precluded from considering additional relevant factors. (*Processing & Books, Inc. v. Pollution Control Board* (1976), 64 Ill. 2d 68, 75-77.) Reference to the statutory criteria, in conjunction with the requirement that the Board's opinions be written and set forth the facts and reasons for its decision (Ill. Rev. Stat. 1971, ch. 111½,

par. 1033(a)), insures that consideration of those criteria is undertaken by the Board, provides guidelines to govern the conduct of those affected by the Act, and facilitates meaningful judicial review. See *Mystik Tape v. Pollution Control Board* (1975), 60 Ill. 2d 330, 336.

On review, the court is entitled to consider all of the evidence presented by the entire record; the findings and conclusions of the Board on questions of fact are *prima facie* true and correct. (Ill. Rev. Stat. 1971, ch. 110, par. 274; ch. 111½, par. 1041.) The provisions of the Environmental Protection Act make it clear that the Board is possessed of expertise and that it has broad discretionary powers. (See *City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482, 490.) It is equally clear, however, that the Board's adjudicatory orders and determinations are subject to judicial review (Ill. Rev. Stat. 1971, ch. 111½, par. 1041), and in order to be sustained must not be contrary to the manifest weight of the evidence. (*E.g., Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill. 2d 290, 296; *City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482, 488.) Thus our responsibility, as was that of the appellate court, is to evaluate all of the evidence on the record in the context of the section 33 criteria to determine whether the Board's findings are contrary to the manifest weight of the evidence.

We add, parenthetically, that in holding the Board's action to be "unreasonable, capricious and arbitrary" (48 Ill. App. 3d 337, 341), the appellate court went beyond the appropriate standard of review. As stated above, adjudicatory, quasi-judicial functions of the Board are reviewed to determine whether the Board's action is contrary to the manifest weight of the evidence. It is the Board's rule-making, quasi-legislative functions, not applicable here, which invoke the arbitrary, unreasonable, or capricious standard of review. See *Monsanto Co. v.*

*Pollution Control Board* (1977), 67 Ill. 2d 276, 288-91.

Applying the statutory criteria to the evidence, a significant portion of the hearings was devoted to "the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people" as specified in section 33(c)(i). The Agency's case was based largely on the testimony of 22 citizens, including residents and officials from Morton Grove and faculty members of Niles West High School. These witnesses variously characterized the odor as unpleasant, annoying and nauseating, and described interference ranging from minor irritation to loss of use of property and increased respiratory difficulty in persons with lung disorders. Wells, on the other hand, introduced expert testimony as to "odor panel tests" which it contended indicated a dramatic decrease in odorous emissions due to its pollution-control efforts. The Agency sought to rebut this evidence of improvement by additional lay witness testimony that no improvement had occurred.

The Board focused on the citizen testimony (see *Hillside Stone Corp. v. Pollution Control Board* (1976), 43 Ill. App. 3d 158; *Marblehead Lime Co. v. Pollution Control Board* (1976), 42 Ill. App. 3d 116; *Sangamo Construction Co. v. Pollution Control Board* (1975), 27 Ill. App. 3d 949), in concluding there was an odor which it characterized as causing "unpleasantness in most people," and specifically found the odors "unreasonably interfered with the enjoyment of life and property." The Board ascribed "relatively less weight" to Wells' odor-panel tests because they were not conducted strictly according to scientific standards. Conversely, the appellate court characterized the interference as "some mild discomfort" and relied upon the Wells' tests as showing a reduction in odor. 48 Ill. App. 3d 337, 339-40.

There is no dispute concerning the second factor of section 33(c), "the social and economic value of the

pollution source." Wells employs approximately 500 persons and is an important supplier of parts used in the automotive, agricultural, petroleum, hydraulics, home-appliance, and aircraft industries. The Board specifically found "the unrefuted evidence presented sufficiently establishes the social and economic value of the Wells facility as a source of necessary industrial parts and as an employer," and this fact was reiterated by the appellate court. 48 Ill. App. 3d 337, 339.

Section 33(c)(iii), concerns "the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved." Wells is located in an area zoned for heavy-industrial use. It has been operating as a foundry on the premises since 1947, when the surrounding area was a sparsely inhabited "swamp." While we agree with the complainants that this priority of location does not achieve the level of an absolute defense (see *City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482, 485), we are impressed with its significance in the context of this particular case. (See *Gardner v. International Shoe Co.* (1944), 386 Ill. 418 (common law nuisance action), and cases there cited; *Processing & Books, Inc. v. Pollution Control Board* (1976), 64 Ill. 2d 68, 77 (incorporating "something of the objective quality of the common law" into the Environmental Protection Act's definition of air pollution).) The residential area and school were built after the foundry had begun operation. In fact, the high school was built upon land, part of which was purchased from Wells. We agree with the appellate court that the residents and school were on notice of the possibility that some annoyances present in heavy-manufacturing areas could affect them, and this fact considerably diminishes the potency of their complaints. See *Wells Manufacturing Co. v. Pollution Control Board* (1977), 48 Ill. App. 3d 337, 339-40.

The Board further found that Wells has increased its size and capacity and production facilities subsequent to the construction of Niles West High School and some of the houses in the residential area. An industry cannot, of course, substantially increase its odorous emissions and simultaneously rely on its priority of location in the area as a mitigating factor. This sort of changed circumstance would, as the Board points out, undermine the industry's priority-of-location argument. The sketchy references in the record regarding those increases are, however, simply not sufficient to meet the Agency's burden of establishing that Wells has substantially increased its emissions, in either volume or offensiveness, subsequent to the development of the high school and residential areas.

Finally, section 33(c)(iv) addresses "the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source." Wells has conceded that economic feasibility has not been a barrier to the installation of any emission-reduction equipment. As to technological practicability, we believe the legislature's use of the word "unreasonable" in the statute clearly places the burden on the Agency to come forward with evidence that emission reduction is practicable. (Ill. Rev. Stat. 1971, ch. 111½, par. 1031(c); see Currie, *Enforcement Under the Illinois Pollution Law,* 70 Nw. U.L. Rev. 389, 460-63 (1975).) However, the lack of available technology is not an absolute defense to a claim of air pollution but rather is one of the factors to be considered by the Board. See *Chicago Magnesium Casting Co. v. Pollution Control Board* (1974), 22 Ill. App. 3d 489, 493.

At the hearings, the Agency introduced extensive evidence, including technical data and expert testimony, as to methods available to Wells to abate the odors. The Board specifically found that either of three methods (ozonation, activated carbon or packed tower) made it

technically feasible for Wells to abate the odors. The expert testimony as to these methods was, however, contradictory. Each expert, who was a salesman for the respective system about which he testified, claimed that his particular system would reduce odors; but each expert also raised substantial doubts as to the potential of the other proposed control methods. Thus, as to the implementation of any particular technology, one expert assured success while two raised serious questions as to its practicability. We agree with the appellate court that this conflicting expert testimony does not support the Board's findings that any of the three methods would abate the foundry odors. We note that one other alternative alluded to by the Board, the purchase of precoated sand for use in the shell-molding process, would apparently eliminate pollution from the sand-coating operation. The difficulty, however, is that the record simply does not establish that this step alone would significantly abate the air pollution involved.

Our review of the record persuades us the Board's action was contrary to the manifest weight of the evidence and was properly reversed by the appellate court. We also believe that court correctly ordered an operating permit be granted to Wells. Obviously, our opinion should not be read as a condonation of Wells' emissions. Rather, we believe the Agency failed to establish the unreasonableness of those odors as required in the Environmental Protection Act.

A motion to strike and physically remove portions of Wells' brief referring to the results of certain odor tests made after the appeal of this case was in process was taken by us for disposition with the case. It is apparent that the appellate court, if it considered those results at all, did so only in the context of deciding Wells' motion to stay enforcement of the Board's order, a purpose for which consideration was proper. While the references in question

have not been considered by us in resolving the issues in this case, we believe no useful purpose would be served by requiring physical removal of those references from the brief. It is accordingly denied.

Our determination that the Board's decision is contrary to the manifest weight of the evidence renders it unnecessary to include an extended discussion of the penalties assessed against Wells. Since the Agency has not met its burden in proving a statutory violation, the penalties were erroneously assessed.

The judgment of the appellate court is accordingly affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I join in the dissent of Mr. Justice Clark, and add the further comment that even were we to allocate the burden of proof in the manner suggested by the majority, the record sustains the Board's findings. In my opinion the majority's characterization of the expert testimony as "contradictory" (73 Ill. 2d at 238) is erroneous and the record would support the finding that any of the three methods suggested would substantially abate the foundry odors. The record shows, too, that Marshall Wells, president of the defendant company, admitted the feasibility of one of the methods and expressed the opinion that it merited further exploration. I would reverse the appellate court and affirm the order of the Pollution Control Board.

MR. JUSTICE CLARK, also dissenting:

After extensive hearings involving numerous disputed questions of fact, the Pollution Control Board (Board) found that the appellee, Wells Manufacturing Company (Wells), had violated sections 9(a) and 9(b) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1971, ch. 111½, pars. 1009(a), (b)), in that Wells had caused air pollution, and had, without a permit, operated a facility

capable of causing pollution.

"Air pollution" is defined in section 3(b) of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1003(b)) to include the "presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to *** *unreasonably* interfere with the enjoyment of life or property." (Emphasis added.)

Under section 31(c) of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1031(c)), complainants' burden of proof was to show that Wells had caused or threatened to cause air pollution. Accordingly, under the theory pursued in this case, complainants' burden was to show that the odors emitted by Wells' facility unreasonably interfered with the enjoyment of life or property. (See *Processing & Books, Inc. v. Pollution Control Board* (1976), 64 Ill. 2d 68, 75-77.) The majority apparently holds that the term "unreasonably" in section 3(b) of the Act (defining air pollution) means that the complainant must "come forward with evidence that emission reduction is practicable." (See 73 Ill. 2d at 237, accord Currie, *Enforcement Under the Illinois Pollution Law,* 70 Nw. U.L. Rev. 389, 461.) Certainly, the majority cannot contend that the use of the word "unreasonable" in defining the respondent's burden of proof somehow defines the complainant's burden of proof. See Ill. Rev. Stat. 1971, ch. 111½, par. 1031(c).

In my opinion, this holding both misconstrues the Act and directly contradicts the unanimous decision of this court in *Processing & Books, Inc. v. Pollution Control Board* (1976), 64 Ill. 2d 68, 75-77. Section 33(c) of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c)) requires that, "[i]n making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved," and goes on to list several such factors, including "the technical practicability *** of reducing or eliminating the emissions,

discharges or deposits" (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c)(iv)). In *Processing & Books,* the appellate court had reversed an order of the Board on the ground that the complainant had failed to meet its burden of proof on the question of the unreasonableness of the odor involved in that case, because the complainant had failed to introduce evidence on several factors stated in section 33(c) of the Act, including the factor which is involved in this case, the technical practicability of reducing or eliminating the odor. See 28 Ill. App. 3d 115, 118-19.

This court unanimously reversed, holding that the word "unreasonable" in section 3(b) of the Act does not include the technical practicability of abatement. Rather, the court unanimously held that the word "unreasonably" was intended only to "exclude the trifling inconvenience, petty annoyance or minor discomfort." (64 Ill. 2d 68, 77.) The majority's opinion in the instant case silently overrules the foregoing unanimous holding of this court. Even if it were to do so expressly, however, I would not concur, because I believe that *Processing & Books* was correctly decided and should not be overruled.

Section 33(c) does not purport to, nor ought it be construed to, allocate burdens of proof. The only provision of the Act relevant to this case which does purport to allocate burdens of proof is section 31(c), which states that a complainant must show that the respondent has caused or threatened to cause air pollution, and which, in this case, means that the complainants were required to demonstrate that Wells' release of contaminants unreasonably interfered with the enjoyment of life or property. (See Ill. Rev. Stat. 1971, ch. 111½, par. 1003(b).) Contrary to what the majority apparently assumes, the factors listed in section 33(c) as being relevant to the *"reasonableness of the emissions, discharges or deposits involved"* do not (with the exception of (i) "the character and degree of injury to, or interference with the protection

of the health, general welfare and physical property of the people") further define the term "air pollution" and therefore are not elements of the complainant's burden of proof.

Rather, that these factors (as well as "all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits") must be considered by the Board means only that these factors are available as affirmative defenses in actions before the Board. Thus, not all those factors which the Board must consider in determining the reasonableness of respondent's conduct need be shown to demonstrate the unreasonableness of the harm caused by that conduct. As a general rule, in an action to enforce a right conferred by statute a complainant's burden normally is only to demonstrate the injury and its cause (*cf., e.g., Calvetti v. Seipp* (1967), 37 Ill. 2d 596, 598-99; see generally, W. Prosser, Torts 190, 198-99 (4th ed. 1971))—in this case, that the odor unreasonably interfered with the enjoyment of life or property, and that Wells caused the odor. Matters within the peculiar knowledge of the respondent, *e.g.,* reasons why it ought not be punished for or prevented from causing the odor, such as the impossibility of profitably operating its business otherwise, or, as in this case, the alleged physical impossibility of significantly reducing or eliminating the odor, normally are not elements of a complainant's burden of proof. Even a massive and highly intrusive amount of discovery frequently would not enable a diligent but inexpert complainant to meet its burden of proof on this question, thereby frustrating the purposes of the Act. I do not believe that the General Assembly intended the remedies provided by this Act to be so illusory; nor do I believe that the General Assembly thought it feasible for complainants to meet the burden of proof established by the majority.

I therefore respectfully dissent.