# ILLINOIS OFFICIAL REPORTS

## Supreme Court

### *Sierra Club v. Illinois Pollution Control Board*, 2011 IL 110882

| | |
|---|---|
| Caption in Supreme Court: | SIERRA CLUB *et al.*, Appellants, v. THE ILLINOIS POLLUTION CONTROL BOARD *et al.*, Appellees. |
| Docket No. | 110882 |
| Filed | October 27, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The judicial review for which the Illinois Environmental Protection Act provides as a means of challenging a Pollution Control Board rule or regulation did not apply to the Board's granting of an adjusted standard which delisted a substance from regulation as hazardous, and delisting opponents who, it was agreed, did not fall into any other statutory category for seeking review lacked standing to do so. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from an Order of the Illinois Pollution Control Board. |
| Judgment | Appeal dismissed. |

Counsel on
Appeal

David L. Wentworth II, and James P. Lawson, of Hasselberg, Williams, Grebe, Snodgrass & Birdsall, of Peoria, for appellants.

Claire A. Manning, of Brown, Hay & Stephens, LLP, of Springfield, and Brian J. Meginnes and Janaki Nair, of Elias, Meginnes, Riffle & Seghetti, P.C., of Peoria, for appellee Peoria Disposal Company.

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of Chicago, of counsel), for appellee Illinois Pollution Control Board.

Nathan D. Eisenberg, of Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C., of Milwaukee, Wisconsin, for *amicus curiae* International Brotherhood of Teamsters Local Union No. 627.

David A. Brown, of Black, Black & Brown, of Washington, for *amicus curiae* Tazewell County, Illinois.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Freeman, Garman, Karmeier, and Burke concurred in the judgment and opinion.

Justice Theis dissented, with opinion, joined by Chief Justice Kilbride.

## OPINION

¶ 1     The dispositive issue in this case is whether Sierra Club and Peoria Families Against Toxic Waste (the opposition groups) had standing to seek review of the Illinois Pollution Control Board's decision granting Peoria Disposal Company's delisting petition. We conclude that they did not.

¶ 2                              BACKGROUND

¶ 3     In 1989, the Illinois Environmental Protection Agency (IEPA) issued a permit to Peoria Disposal Company (PDC) to operate a waste stabilization facility near Peoria for the storage and treatment of hazardous and nonhazardous waste. In 2008, PDC filed an adjusted standard petition under section 28.1 of the Illinois Environmental Protection Act (the Act) (415 ILCS 5/28.1 (West 2008)), asking the Illinois Pollution Control Board (the Board) to delist (*i.e.*, exclude from hazardous waste regulation) certain residue generated from PDC's treatment

of K061 electric arc furnace dust. Following a public hearing, the Board issued a 103-page order granting PDC a delisting adjusted standard, subject to several conditions. *In re RCRA Delisting Adjusted Standard Petition of Peoria Disposal Co.*, Ill. Pollution Control Bd. Op. AS 08-10 (Jan. 8, 2009) (Board Order).

¶ 4    The opposition groups filed a timely petition for review of the Board Order (Ill. S. Ct. R. 335 (eff. Feb. 1, 1994), and a sharply divided appellate court affirmed. 403 Ill. App. 3d 1012. In the appellate court, two basic issues were presented: (1) whether the opposition groups had standing to seek review of the Board Order, and (2) whether the Board Order was correct on the merits. Writing for the court, Justice Lytton concluded that the opposition groups had standing and that the Board Order should be affirmed on the merits. In a special concurrence, Justice Carter concluded that the opposition groups did *not* have standing and that the appeal therefore should be dismissed. In partial dissent, Justice Wright concluded that the opposition groups had standing and that the Board Order should be reversed on the merits.

¶ 5    The opposition groups appealed to this court, and we granted their petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 6                                   ANALYSIS

¶ 7    Before this court, the opposition groups once again argue that the Board Order is erroneous for several reasons and therefore must be either reversed or vacated. In response, PDC and the Board renew their argument that this appeal should be dismissed because the opposition groups lack standing to seek judicial review of the Board Order. In the alternative, PDC and the Board argue the Board Order is correct on the merits and therefore should be affirmed.

¶ 8    We begin with the standing question, which is a question of law that we review *de novo*. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004).

¶ 9    Section 28.1 of the Act, which governs adjusted standards, states that "[a] final Board determination made under this Section may be appealed pursuant to Section 41 of this Act." 415 ILCS 5/28.1(g) (West 2008). Section 41(a), in turn, provides that:

> "Any party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under this Act, any party adversely affected by a final order or determination of the Board, and any person who participated in the public comment process under subsection (8) of Section 39.5 of this Act may obtain judicial review, by filing a petition for review within 35 days from the date that a copy of the order or other final action sought to be reviewed was served upon the party affected by the order or other final Board action complained of, under the provisions of the Administrative Review Law, as amended and the rules adopted pursuant thereto, except that review shall be afforded directly in the Appellate Court for the District in which the cause of action arose and not in the Circuit Court. Review of any rule or regulation promulgated by the Board shall not be limited by this section but may also be had as provided in Section 29 of this Act." 415 ILCS 5/41(a) (West 2008).

Section 29(a) then states that "[a]ny person adversely affected or threatened by any rule or

regulation of the Board may obtain a determination of the validity or application of such rule or regulation by petition for review under Section 41 of this Act." 415 ILCS 5/29(a) (West 2008).

¶ 10    Here, the parties agree that the opposition groups do not fall into any of the categories of persons enumerated in section 41(a). That is, they are not a party, a person who filed a complaint on which a hearing was denied, a person who was denied a variance or permit, or a participant in the public comment process under subsection (8) of section 39.5 of the Act. Thus, the question becomes whether the Board Order constitutes a "rule or regulation promulgated by the Board." If it does, then section 41(a) would allow the opposition groups to seek review under section 29(a), provided that they were in some way "adversely affected or threatened" by the Board Order. If the Board Order does *not* constitute a "rule or regulation promulgated by the Board," then the opposition groups are out of options and have no standing to seek review.

¶ 11    For several reasons, we conclude that the Board Order is *not* a "rule or regulation promulgated by the Board." For starters, section 28.1 repeatedly draws a distinction between rules and regulations on the one hand, and adjusted standards on the other. For example, section 28.1(a) states that, "*[a]fter adopting a regulation of general applicability*, the Board may grant, in a subsequent adjudicatory determination, an adjusted standard for persons who can justify such an adjustment." (Emphasis added.) 415 ILCS 5/28.1(a) (West 2008). Clearly, then, the adjusted standard is not *itself* the regulation promulgated by the Board; rather, it is an individualized exception to that regulation. Likewise, section 28.1(b) states that "*[i]n adopting a rule of general applicability*, the Board may specify the level of justification required of a petitioner for an adjusted standard." (Emphasis added.) 415 ILCS 5/28.1(b) (West 2008). Again, this language confirms that an adjusted standard is not itself a "rule of general applicability," but rather something separate and distinct from such a rule. Finally, section 28.1(a) specifically states that "[t]he rule-making provisions of the Illinois Administrative Procedure Act and Title VII of [the] Act *shall not apply* to [adjusted standard] determinations." (Emphasis added.) 415 ILCS 5/28.1(a) (West 2008). If the standards and procedures governing the Board's rulemaking authority do not apply to the adjudication of adjusted standard petitions, then necessarily the Board is not engaged in rulemaking when it adjudicates such a petition.

¶ 12    Below, Justice Lytton concluded that, while the Board Order may not have created a rule or regulation of general applicability, it did "create[ ] a rule or regulation specific to PDC." 403 Ill. App. 3d at 1019. The problem with this conclusion, however, is that the Act draws just as clear a distinction between orders granting adjusted standards and "regulations specific to individual persons, geographic areas or sites." Indeed, the grant of authority to adopt regulations specific to individual persons or sites is found not in section 28.1, which governs adjusted standards, but in section 27(a), which governs rulemaking:

> "The Board may adopt substantive regulations as described in this Act. *Any such regulations may *** include regulations specific to individual persons or sites*." (Emphasis added.) 415 ILCS 5/27(a) (West 2008).

As importantly, section 28.1 makes explicit that the Board's authority to adjudicate and grant

adjusted standards is entirely distinct from its authority to adopt rules and regulations specific to individual persons or sites:

> "This Section shall not be construed so as to affect or limit the authority of the Board to adopt, amend or repeal regulations specific to individual persons, geographic areas or sites pursuant to Sections 27 and 28 of this Act ***." 415 ILCS 5/28.1(h) (West 2008).

If the Board has the specific statutory authority to adopt regulations specific to individual persons or sites, and if the granting of an adjusted standard petition can neither *affect* nor *limit* that authority, then necessarily the granting of such a petition is not itself an *exercise* of that authority. Justice Lytton's conclusion to the contrary is simply incorrect.

¶ 13     We also deem significant section 28.1(a)'s explicit pronouncement that the Board's decision to grant an adjusted standard is an "adjudicatory determination." 415 ILCS 5/28.1(a) (West 2008). It is well settled that the Board performs both quasi-legislative and quasi-judicial functions. *Landfill, Inc. v. Pollution Control Board*, 74 Ill. 2d 541, 554 (1978). Section 28.1 establishes that the granting of an adjusted standard is an *adjudicative* determination–that is, quasi-judicial in nature. By contrast, the adoption of a rule or regulation is *legislative* in nature. See *Wells Manufacturing Co. v. Pollution Control Board*, 73 Ill. 2d 226, 235 (1978). If the granting of an adjusted standard is *judicial* in nature, and the adoption of a rule or regulation is *legislative* in nature, then there is simply no way to conclude the granting of an adjusted standard results in the adoption of a rule or regulation. The two functions are fundamentally distinct.[1]

¶ 14     On this point, we wish to emphasize that, under the plain language of section 28.1(a), it is the Board's *determination* that is adjudicative in nature. We emphasize this because, both below and in this court, the opposition groups have strenuously argued that, while section 28.1(a) may require the Board to conduct an adjudicatory *proceeding* to determine whether to grant an adjusted standard, the resulting *determination* (*i.e.*, the adjusted standard itself) is regulatory in nature. The plain language of section 28.1(a) precludes any such argument. Section 28.1(a) states that "[a]fter adopting a regulation of general applicability, the Board may grant, in a subsequent adjudicatory *determination*, an adjusted standard for persons who can justify such an adjustment." (Emphasis added.) 415 ILCS 5/28.1(a) (West 2008). A "determination" is not a proceeding. Rather, it is the "final decision by a court or administrative agency." Black's Law Dictionary 514 (9th ed. 2009). Thus, under the plain language of section 28.1(a), it is the *result* of an adjusted standard proceeding that is adjudicatory in nature, not merely the process.

¶ 15     Finally, we note that, under the Illinois Administrative Procedure Act, the Secretary of State is required to publish "the complete text of all rules of all State agencies" in the Illinois Administrative Code. 5 ILCS 100/5-80(f) (West 2008). Given this requirement, if a delisting

---

[1]The Illinois Administrative Code confirms this conclusion both positively (an adjusted standard is an "adjudicative proceeding" that is "quasi-judicial in nature") and negatively ("[a]djudicatory proceedings do not include regulatory, quasi-legislative, or informational proceedings"). 35 Ill. Adm. Code 101.202 (2011).

adjusted standard were in fact a "rule or regulation," we would expect to see the complete text of the Board's orders granting such standards published in the Illinois Administrative Code. But we do not. On the contrary, the Illinois Administrative Code's sole reference to such orders is a table, much like this court's disposition of petitions for leave to appeal table, which lists only the case number, the name of the petitioner, the provision of the Illinois Administrative Code to which the delisting adjusted standard applies, and the particular hazardous substance involved. See 35 Ill. Adm. Code 721 app. I, table D (2011). Far from constituting the "complete text" of the Board's delisting order, which in this case ran 103 single-spaced pages and set forth extensive terms, standards, and conditions, an entry in table D is little more than a case caption followed by three or four lines of summary data. For this reason, as well, we simply cannot conclude that an order granting a delisting adjusted standard is a "rule or regulation."

¶ 16                                            CONCLUSION

¶ 17        In sum, there are numerous compelling reasons for us to conclude that an order granting an adjusted standard is not a "rule or regulation promulgated by the Board." Consequently, such orders are not appealable under section 29(a) of the Act, and the opposition groups are without any statutory basis for prosecuting this appeal. We therefore vacate the appellate court's decision below and dismiss the appeal in its entirety.

¶ 18        Appeal dismissed.

¶ 19        JUSTICE THEIS, dissenting:

¶ 20        I dissent from the majority's decision to dismiss this appeal. I believe that the opposition groups have standing to seek judicial review of the Board's decision to grant PDC's adjusted standard petition.

¶ 21        The petition was filed pursuant to section 28.1 of the Illinois Environmental Protection Act (415 ILCS 5/28.1 (West 2008)). Section 28.1(a) provides:

        "After adopting a regulation of general applicability, the Board may grant, in a subsequent adjudicatory determination, an adjusted standard for persons who can justify such an adjustment consistent with subsection (a) of Section 27 of this Act. In granting such adjusted standards, the Board may impose such conditions as may be necessary to accomplish the purposes of this Act. The rule-making provisions of the Illinois Administrative Procedure Act [5 ILCS 100/1-1 *et seq.*] and Title VII of this Act [415 ILCS 5/26 *et seq.*] shall not apply to such subsequent determinations." 415 ILCS 5/28.1(a) (West 2008).

Such a determination may be appealed pursuant to section 41 of the Act. 415 ILCS 5/28.1(g) (West 2008).

¶ 22        Section 41(a) lists various persons and parties who may obtain judicial review under the Act. 415 ILCS 5/41(a) (West 2008). Section 41 further states, however, that "[r]eview of any rule or regulation promulgated by the Board shall not be limited by this section but may also

be had as provided in Section 29 of this Act." *Id.* Section 29(a), in turn, offers another statutory basis for prosecuting an appeal: "Any person adversely affected or threatened by any rule or regulation of the Board may obtain a determination of the validity or application of such rule or regulation by petition for review under Section 41 ***." 415 ILCS 5/29(a) (West 2008).

¶ 23    The opposition groups acknowledge that they are not among those enumerated in section 41(a), and do not have a statutory basis to appeal under that section, but they assert that they do have standing under section 29(a). To make a *prima facie* case for standing, the opposition groups must show, first, that their members were adversely affected or threatened by the adjusted standard and, second, that the adjusted standard was a rule or regulation of the Board.

¶ 24    Regarding the first element, there is little dispute among the parties. The opposition groups represent residents of the Peoria area who are concerned that toxic substances in the electric arc furnace dust treated by PDC may negatively impact their lives. The Board's order noted that members of the opposition groups–three members of Peoria Families Against Toxic Waste and one member of the Sierra Club's Heart of Illinois chapter–made timely requests for a hearing on PDC's petition. At that hearing 27 citizens of Peoria, Tazewell, and DeWitt Counties, including members of the opposition groups, provided oral public comments against the delisting. Members of the opposition groups also submitted written comments. Cara Rossom, on behalf of Peoria Families Against Toxic Waste, asserted that electric arc furnace dust contains heavy metals, such as hexavalent chromium, mercury, and lead, which could present a danger to area residents if such substances entered the Sankoty and Mahomet aquifers.[2] Joyce Blumenshine, on behalf of the Heart of Illinois Sierra Club, which includes approximately 500 members in the Peoria area, expressed "the untold public health costs of adding dioxins, furans, *** and other [electric arc furnace dust] related toxins" to the environment, as well as the "real and present danger for current and future generations because of the potential for leaching of toxins" into the groundwater. Though PDC states that "the opposition groups never established any evidentiary rationale for their claim of being 'adversely impacted or threatened' by the Board's grant of this adjusted standard," it is difficult to imagine what else they would need to establish. Certainly, they have shown sufficiently that they are adversely affected, or at least threatened by, the adjusted standard delisting such waste.

¶ 25    Regarding the second element–whether the adjusted standard is a rule or regulation–the matter is less clear. The majority concludes that the adjusted standard is not a rule or regulation, for several reasons. According to the majority, section 28.1 "repeatedly draws a distinction between rules and regulations on the one hand, and adjusted standards on the other." *Supra* ¶ 11. Because an adjusted standard is "an individualized exception" (*supra* ¶ 11) to a regulation of general applicability (415 ILCS 5/28.1(a) (West 2008)), the majority

_____

[2]The Sankoty-Mahomet aquifer is a water source for the Peoria area. See generally Illinois State Water Survey, *The Sankoty-Mahomet Aquifer in the Confluence Area of the Mackinaw and Mahomet Bedrock Valleys, Central Illinois* (1994).

states that it cannot itself be a rule or regulation. This reading of the Act is too narrow.

¶ 26 Here, the general regulation comes from federal law. Section 22.4 of the Act requires the Board to "adopt regulations which are identical in substance to federal regulations" promulgated by the Administrator of the United States Environmental Protection Agency (USEPA) to implement the Resource Conservation and Recovery Act of 1976 (RCRA). Under RCRA, the USEPA has listed "[e]mission control dust/sludge from the primary production of steel in electric furnaces" (40 C.F.R. § 261.32(a)), as well as any material "generated from" its treatment (40 C.F.R. § 261.3(c)(2)(i)), as hazardous waste, and the Board has adopted this designation (35 Ill. Adm. Code § 721.132 (2011)). The USEPA had allowed hazardous waste to be "delisted" pursuant to a regulatory procedure. See 40 C.F.R. § 260.22. The Board has also adopted this procedure. See 35 Ill. Adm. Code § 720.122 (2011). The Administrative Code further provides: "Delistings that have not been adopted by USEPA may be proposed to the Board pursuant to a petition for adjusted standard pursuant to Section 28.1 of the Act ***." 35 Ill. Adm. Code § 720.122(n) (2011). The Code specifies the justification required for an adjusted standard delisting hazardous waste. See 35 Ill. Adm. Code §§ 720.122(a) through 720.122(g) (2011).

¶ 27 After PDC developed new technology to stabilize the residue left after it processes electric arc furnace dust, it wanted relief from the general regulation. PDC could have proposed a site-specific amendment of that regulation under section 27(a) of the Act. See 415 ILCS 5/27(a) (West 2008); 415 ILCS 5/28(a) (West 2008) ("Any person may present written proposals for the adoption, amendment, or repeal of the Board's regulations."). Instead, it chose to file a petition for an adjusted standard. Section 101.202 of the Administrative Code defines an adjusted standard as "an alternative standard granted by the Board in an adjudicatory proceeding," which "applies instead of the rule or regulation of general applicability." 35 Ill. Adm. Code § 101.202 (2011). An adjusted standard, then, provides relief from a general rule or regulation in the same way that a site-specific amendment would. Both an adjusted standard and a site-specific amendment are distinct from a general rule or regulation; they are, in effect, specific rules or regulations. Section 104.400 of the Administrative Code recognizes this point, stating, "An adjusted standard has the effect of an environmental regulation that would apply to petitioner, if granted, in lieu of the general regulation that would otherwise be applicable to a petitioner and the regulated community." 35 Ill. Adm. Code § 104.400 (2011). Notably, the majority fails to address this section of the code.

¶ 28 Instead, the majority places great weight upon a purported distinction in the Act between specific regulations and adjusted standards. *Supra* ¶ 11. According to the majority, the former are governed by section 27(a) of the Act, which provides that the Board may adopt substantive regulations, including "regulations specific to individual persons or sites" (415 ILCS 5/27(a) (West 2008)), while the latter are governed by section 28.1, which states that the authority to grant adjusted standards "shall not be construed so as to affect or limit the authority of the Board to adopt, amend or repeal regulations specific to individual persons *** or sites" under section 27 (415 ILCS 5/28.1(h) (West 2008)). The majority states:

> "If the Board has the specific statutory authority to adopt regulations specific to individual persons or sites, and if the granting of an adjusted standard petition can

neither *affect* nor *limit* that authority, then necessarily the granting of such a petition is not itself an *exercise* of that authority." (Emphases in original.) *Supra* ¶ 12.

¶ 29 The majority misreads the Act. The Board's authority under section 28.1 may not affect or limit its authority under section 27, but the Board's exercise of either authority may still result in specific rules and regulations. The Board may adopt a specific rule or regulation under section 27(a), or under section 28.1(a) using the label "adjusted standard." In fact, section 28.1 even refers back to section 27, stating that the Board may grant an adjusted standard only for those persons "who can justify such an adjustment consistent with subsection (a) of Section 27 of this Act." 415 ILCS 5/28.1(a) (West 2008). Thus, the Board, in deciding whether to grant an adjusted standard, considers the very same factors that it does in deciding whether to adopt a rule or regulation. In promulgating both regulations and adjusted standards under the Act,

> "the Board shall take into account the existing physical conditions, the character of the area involved, including the character of surrounding land uses, zoning classifications, the nature of the existing air quality, or receiving body of water, as the case may be, and the technical feasibility and economic reasonableness of measuring or reducing the particular type of pollution." 415 ILCS 5/27(a) (West 2008).

¶ 30 Adjusted standards, in short, are specific rules and regulations adopted pursuant to a statutory mechanism that differs from that of traditional rulemaking. In *Central Illinois Public Service Co. v. Pollution Control Board*, 116 Ill. 2d 397, 404-05 (1987), we discussed section 27 and 28.1 of the Act:

> "All rules adopted pursuant to section 27, even site-specific rules, must be adopted pursuant to a detailed procedure, including specific consideration of the economic impact of the regulation [citation], publication, hearings, and stenographic transcription of testimony [citation]. Section 28.1, on the other hand, allows the Board an alternative method of adopting site-specific modifications to general rules. Adjusted standards may be adopted under section 28.1 without all of the procedural steps required for the adoption of general regulations, so long as the original regulation of general applicability, adopted pursuant to the full rulemaking procedures, specifies the procedures and levels of justification which will entitle a petitioner to an adjusted standard."

The impetus for section 28.1 came from an opinion by the Board in which it adopted "streamlined procedures whereby site-specific relief could be granted without full rule-making procedures for each site-specific regulation." *Central Illinois Public Service Co.*, 116 Ill. 2d at 405-06 (citing *In re Review of Existing Regulations, Rule 602 of Chapter 3: Water Pollution Combined Sewer Overflow*, 46 Ill. Pollution Control Bd. Op. 63 (1982)).

¶ 31 Under section 27, the Board must comply with the panoply of formal requirements before it acts. See 415 ILCS 5/27(b) (West 2008). Under section 28.1, the Board may act more expeditiously, and avoid those requirements, as well as the rulemaking provisions of the Illinois Administrative Procedure Act. See 415 ILCS 5/28.1(a) (West 2008). Section 28.1 may make the process by which the Board reaches a decision less cumbersome, but it does

not transform that decision into something other than a specific rule or regulation. That is, specific rules and regulations adopted under sections 27 and 28.1 are substantively similar, though procedurally different.

¶ 32 The majority places great emphasis upon the phrase "adjudicatory determination" in section 28.1, stating that the decision to grant an adjusted standard is

> "an *adjudicative* determination–that is, quasi-judicial in nature. By contrast, the adoption of a rule or regulation is *legislative* in nature. [Citation.] If the granting of an adjusted standard is *judicial* in nature, and the adoption of a rule or regulation is *legislative* in nature, then there is simply no way to conclude the granting of an adjusted standard results in the adoption of a rule or regulation. The two functions are fundamentally distinct." (Emphases in original.) *Supra* ¶ 13.

¶ 33 However, section 28.1(b) blurs the line between the Board's judicial and legislative roles, because it allows the Board, in adopting a general rule or regulation, to indicate the level of justification, or conditions, required for relief from that rule. 415 ILCS 5/28.1(b) (West 2008). The Board did that here. See 35 Ill. Adm. Code § 720.122 (2011). The Board, in this context, has a dual role. Granting a party relief from a regulation is quasi-judicial, but placing conditions on such relief is quasi-legislative. *Environmental Protection Agency v. Pollution Control Board*, 86 Ill. 2d 390, 400 (1981). Conditions are like a rule, operating prospectively on a party who can fulfill them. See *Monsanto Co. v. Pollution Control Board*, 67 Ill. 2d 276, 290 (1977) (holding that the power to impose conditions on variances from environmental regulations is quasi-legislative). The Board's legislative and judicial functions are not as fundamentally distinct as the majority insists, but to the extent that they are, it remains a distinction without a difference–a distinction, again, between the processes by which decisions are reached, not the decisions themselves. The label placed upon an adjusted standard is just that: a label. It has no bearing upon who may prosecute an appeal of its validity.

¶ 34 Finally, the Board itself, despite its current position in this case, has previously stated that any person should be able to obtain judicial review of an adjusted standard. On June 8, 1989, the Board issued an opinion and order regarding procedural rules revisions to various sections of Article 35 of the Illinois Administrative Code. *In re Procedural Rules Revision*, No. R88-5(A) (Ill. Pollution Control Bd. June 8, 1989). Regarding section 106.905, which has since been repealed,[3] the Board discussed who may appeal adjusted standard decisions under section 28.1 of the Act:

> "Since Section 28.1 of the Act does specifically name 'parties' to an adjusted standard [p]roceeding the Board believes that an appeal of an adjusted standard decision would be available to any person, as it is in a rulemaking context. The Board cannot see a distinction between the public's interest in an appeal of an

---

[3]Section 106.905 provided, "Any final order or determination of the Board in an adjusted standard proceeding may be appealed to the appellate court pursuant to section 41 of the Act." *Id.* at 110-62. According to the Board, it "merely restate[d]" section 28.1(g) of the Act. *Id.* at 100-17; see 415 ILCS 5/28.1(g) (West 2008).

environmental standard which was promulgated as a rule as opposed to one which was adopted pursuant to an adjusted standard proceeding. The Act has [p]rovided for broad public participation in the adoption and appeal of environmental standards. There is no apparent reason to deviate from that theme for adjusted standard proceedings." *Id.* at 110-17.

¶ 35     Section 29(a) should provide persons affected or potentially affected parties an avenue to appeal the Board's decision to grant adjusted standard. I would find the opposition groups have standing and reach the merits of this appeal.

¶ 36     CHIEF JUSTICE KILBRIDE joins in this dissent.